Katherine D. CROTHALL, et al., Defendants–Below, Appellants, Cross–Appellees,

and

Adhezion Biomedical, LLC, a Delaware limited liability company, Nominal Defendant–Below, Appellant, Cross–Appellee,

v.

Robert ZIMMERMAN, Plaintiff–Below, Appellee,

and

The Williford Firm, LLC and Evan O. Williford, Intervenors–Below, Appellees, Cross–Appellants.

No. 608, 2013.

Supreme Court of Delaware.

Submitted: May 28, 2014.
Decided: June 9, 2014.

Richard A. Barkasy, Esquire, Schnader Harrison Segal & Lewis LLP, Wilmington, Delaware, Attorney for Defendants, Appellants, Cross–Appellees.

David J. Margules, Esquire, Ballard Spahr LLP, Wilmington, Delaware, Attorney for Nominal Defendant, Appellant, Cross–Appellee.

Evan O. Williford, Esquire, The Williford Firm LLC, Wilmington, Delaware, Attorney for Intervenors, Appellees, Cross–Appellants.

Before STRINE, Chief Justice, HOLLAND, and RIDGELY, Justices.

STRINE, Chief Justice:

This is an unusual appeal that arises from what was once a derivative suit in the Court of Chancery. The derivative plaintiff in this case was Robert Zimmerman, a common unitholder of Adhezion Biomedical, LLC ("Adhezion"), who was also the co-founder, former CEO, and a former director of Adhezion. Zimmerman brought suit against the directors of Adhezion and two Adhezion investors—Liberty Advisors, Inc. and Originate Ventures, LLC—whom he alleged controlled Adhezion (the "Adhezion Defendants"). Zimmerman challenged certain financing transactions and associated unit issuances by Adhezion on the grounds that (i) the financing transactions were substantively unfair and thus violated the directors' fiduciary and contractual duties, and (ii) the unit issuances were not made in conformity with Adhezion's Operating Agreement because the units issued had not been authorized by an amendment to the Operating Agreement approved by Adhezion's common unitholders, voting as a separate class. After a trial, the Court of Chancery issued an opinion rejecting Zimmerman's substantive claims that the unit issuances were in any way unfair to Adhezion, but holding that Zimmerman was correct that the Operating Agreement had been violated because the units were issued without an amendment approved by a separate vote of the

common unitholders authorizing the units.[1] Because the breach of the Operating Agreement caused no damage, the Court of Chancery awarded only nominal damages of one dollar.[2]

■ Before the parties were able to reach an agreement on the appropriate form of final judgment, Zimmerman informed his counsel that he was abandoning the lawsuit and was no longer pursuing his claims. Based on that information, Zimmerman's counsel filed a motion to withdraw as counsel for Zimmerman and to intervene in the case for the purpose of securing attorney's fees for the work he had performed in the litigation.[3] Zimmerman then sold all of his Adhezion units for personal gain, which deprived Zimmerman of standing to continue in the fiduciary status he had undertaken as a derivative plaintiff, and the Adhezion Defendants filed a motion to dismiss the litigation in its entirety.[4] Because Zimmerman lacked standing and no other plaintiff expressed any interest in pursuing the case, the Court of Chancery granted the Adhezion Defendants' motion to dismiss the case.[5] Therefore, no final judgment from which the Adhezion Defendants could have appealed was ever entered on the one claim that the Court of Chancery found had merit. But, in an odd development, Zimmerman's former counsel was still granted leave to intervene, over the Adhezion Defendants' opposition, to pursue an argument that he should be paid attorney's fees for creating a corporate benefit.[6]

The Court of Chancery awarded Zimmerman's former counsel $300,000 in attorney's fees, which constitutes nearly a full recovery for all of his work in the case.[7] The supposed corporate benefit

1. *Zimmerman v. Crothall*, 62 A.3d 676, 716 (Del.Ch.2013).

2. *Id.*

3. Motion to Withdraw as Counsel for Plaintiff Robert Zimmerman and to Intervene as an Interested Party (April 1, 2013).

4. Defendant's Motion to Dismiss (May 17, 2013).

5. *Zimmerman v. Crothall*, 2013 WL 5630992, at *5–6 (Del.Ch. Oct. 14, 2013).

6. Although the Adhezion Defendants have not appealed the Court of Chancery's decision to allow Zimmerman's former counsel to intervene, we feel constrained to note our observance of the odd procedural circumstances and to add that nothing in this Opinion should be considered as suggesting that intervention was properly granted. Zimmerman's former counsel's request to intervene personally to claim fees for creating a corporate benefit when his client has abandoned the lawsuit was an unusual application. Although Zimmerman's former counsel may be upset with his client for abandoning the lawsuit, the more traditional approach would have been for him to sue his former client for his fees, in accordance with his contract with the client. Lawyers are not permitted to sue corporate directors without a stockholder client, and if a client quits the litigation and renders his claim moot, it is not obvious why the lawyer would be personally permitted to sue the corporation for having represented a former client, especially in litigation in which the client was largely unsuccessful and which caused the corporation great expense. If Zimmerman's former counsel feels that his efforts allowed Zimmerman to obtain a favorable personal settlement, then that is a feeling he may be able to translate into a theory of recovery for fees from Zimmerman. But to permit a lawyer in a representative action to recover from the company directly creates incentives of a troubling nature, in an area of the law already fraught with potential conflict.

7. Zimmerman's former counsel argued that his lodestar was $337,359.59, which included 581 hours at what he contended was his normal rate of $465.00 per hour as well as some paralegal fees and other expenses. *Zimmerman v. Crothall*, 2013 WL 5630992, at *12 (Del.Ch. Oct. 14, 2013). The Court of Chancery noted that "the total award of $300,000 net of expenses and the fees attributable to

that justified this fee award was the Court of Chancery's ruling that, under Adhezion's Operating Agreement, a vote of the common unitholders was required to authorize additional units. But because Zimmerman sold his shares and the claim underlying that ruling was dismissed, the ruling could not be the subject of a final judgment and the Adhezion Defendants were, therefore, denied the opportunity to appeal the Court of Chancery's ruling directly. Zimmerman's former counsel was granted a nearly full recovery even though the one claim on which Zimmerman succeeded was never the subject of an appealable final judgment, Zimmerman did not prevail on most of his claims, and most of Zimmerman's former counsel's time had been spent on the claims that he lost.[8] The fee award also failed to consider whether a net benefit that would justify the support of any award of attorney's fees had actually been produced by Zimmerman's former counsel—given that the former plaintiff had lost on most of his claims and had cost the company great expense and time defending those meritless claims.

Because of this odd context, we are now faced with a situation where the appellants, the Adhezion Defendants, have understandably asked us to consider the merits of the Court of Chancery's ruling on the dismissed claim that formed the basis for the Court of Chancery's determination that the appellee, Zimmerman's former counsel, had created a corporate benefit. The Adhezion Defendants have fairly argued that the dismissed claim had been erroneously decided by the Court of Chancery because the Court of Chancery had incorrectly interpreted the Operating Agreement, and that, therefore, no benefit was created by Zimmerman's former counsel. The Court of Chancery's ruling on that dismissed claim involved the interpretation of provisions of the Operating Agreement that the Court of Chancery itself admitted were ambiguous and could be reasonably read as the defendants suggested,[9] and which the Court of Chancery resolved against the Adhezion Defendants despite the fact that the only witness who testified at trial regarding the negotiation and drafting of the Operating Agreement gave a different reading to the contested provisions.

We decline to address the merits of the Court of Chancery's mooted ruling on the dismissed claim, but we conclude that Zimmerman's former counsel did not create a corporate benefit and is not entitled to attorney's fees for another reason. When Zimmerman mooted this case by abandoning his claims and selling his units, causing the dismissal of his claims, Zimmerman also rendered any rulings he had obtained incapable of being turned into an appealable final judgment. Thus, Zimmerman

---

the paralegal work still yields a relatively high imputed hourly rate ... of approximately $400.00." *Id.*

**8.** Although Zimmerman's former counsel was unable to determine the percentage of time he spent on each of the claims, he conceded at oral argument that less than half of his time was spent on the provisionally successful breach of contract claim. We also note that Zimmerman's former counsel failed to present any witnesses at the three day trial related to the breach of contract claim from which those fees were awarded, and did not cross-examine the one witness who was called by the Adhezion Defendants to testify about the provisions of the Operating Agreement. *See* Appendix to Opening Br. at A411.

**9.** *Zimmerman v. Crothall*, 2012 WL 707238, at *20–21 (Del.Ch. Mar. 5, 2012) (finding, on a motion for summary judgment, that the provisions of the Operating Agreement were ambiguous and that the Adhezion Defendants' reading of the Operating Agreement as allowing it to authorize additional units without a vote of the common unitholders was a reasonable one).

did not obtain an authoritative ruling of the Court of Chancery that can create a corporate benefit. At most, Zimmerman and his former counsel obtained a ruling of the Court of Chancery that, if it survived appeal from the Adhezion Defendants, would have become a binding interpretation of the Operating Agreement. But precisely because Zimmerman chose to sell his shares and moot the case, he caused the dismissal of his claims and reduced his former efforts into having produced a ruling of the Court of Chancery that could never be tested on appeal directly.

■ Although the Court of Chancery granted an award of attorney's fees based on its ruling that the Operating Agreement gave common unitholders approval rights over the authorization of additional units, the Court of Chancery itself was not even sure what collateral effect its mooted ruling would have.[10] Because Zimmerman abandoned his claims, caused them to be dismissed, and prevented the entry of a final judgment from which the Adhezion Defendants could appeal, the traditional

requirement for issue preclusion to arise— the entry of a final judgment on an issue that was actually litigated and necessary to the resolution of the claim—does not exist.[11] In these circumstances, we fail to see how a mooted ruling that was dismissed before a final judgment was entered could create any corporate benefit.

Zimmerman's former counsel relies on *In re First Interstate Bancorp Consolidated Shareholder Litigation*,[12] a case where this Court permitted the recovery of attorney's fees even though the claims in the case had been mooted before a final judgment was entered. But Zimmerman's former counsel overlooks an important distinction between the cases in which we have allowed attorney's fees when claims have been mooted and this case: in cases where we have allowed an award of attorney's fees on a mooted claim, the claims were rendered moot because of action taken by the *defendants* and the action taken by the defendants that rendered the claim moot simultaneously created the corporate

---

10. *Zimmerman v. Crothall*, 2013 WL 5630992, at *10 (Del.Ch. Oct. 14, 2013) ("Under the circumstances of this case, litigating that issue and procuring the Post–Trial Opinion conferred a compensable corporate benefit on Adhezion and its unitholders, whether or not the Post–Trial Opinion is given preclusive effect in future litigation. As a result, I need not resolve or express a definitive opinion on the question of, for example, the issue-preclusive effect of that Post–Trial Opinion. In that regard, however, I note that this Court's Post–Trial Opinion serves as the basis for my decision in this Memorandum Opinion to award attorneys' fees to [Zimmerman's former attorney] over Defendants' objections. Thus, I will enter a final order reflecting that this decision and my reliance on the portion of the Post–Trial Opinion regarding the Class A Common unitholders' rights of approval. Depending on the issues and circumstances, that order *conceivably might* have issue-preclusive effect in a future case.") (emphasis added).

11. Claim preclusion and issue preclusion apply only to bar the litigation of claims and issues that have previously "litigated and determined by a valid and *final judgment*." *Columbia Casualty Co. v. Playtex FP, Inc.*, 584 A.2d 1214, 1216 (Del.1991) (quoting *Tyndall v. Tyndall*, 238 A.2d 343, 346 (Del.1968) (emphasis added)); *see also* 18A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4433 (2014) ("Denial of preclusion because circumstances have thwarted an ordinary opportunity for appellate review is most easily illustrated by cases that become moot pending appeal. *It is settled that preclusion should be defeated by the inability to secure appellate review in such cases* .... In some cases this result might rest on the ground that the party who won in the trial court should not be able to moot the case deliberately in order to preserve the preclusive effects of a shaky judgment.") (emphasis added).

12. *In re First Interstate Bancorp Consol. S'holder Litig.*, 756 A.2d 353 (Del.Ch.1999).

benefit that the plaintiff had been seeking and for which the plaintiff was entitled to have its attorneys fees paid.[13] But Zimmerman's former counsel has not identified any cases in which this court has held that a plaintiff's attorney is entitled to fees for creating a corporate benefit when the *plaintiff* took action that mooted the claims, caused their dismissal, and prevented the entry of a final judgment.

■ A plaintiff who generates a favorable trial court decision on a closely contested issue of corporate governance but then abandons his claim and renders the decision moot before it becomes final has not created a corporate benefit, he has merely caused uncertainty. To find otherwise would not only create problematic incentives for representative plaintiffs in an area already fraught with the potential for conflicts of interest,[14] but would put this Court in the position of having to render a decision on a mooted issue of corporate governance simply to assure that the Adhezion Defendants have not been improperly asked to bear Zimmerman's former counsel's fee. That would bring us perilously close to rendering an advisory opinion and would require us to use limited judicial resources to determine a question that Zimmerman chose to withdraw.

In sum, no corporate benefit has been created in this case because any benefit that might have been created by continuing this suit to a final, appealable judgment disappeared when Zimmerman abandoned the lawsuit. As a result, Zimmerman's former counsel was not entitled to any fee award. Thus, we need not determine whether the fee that was awarded was excessive because it awarded Zimmerman's former counsel compensation for nearly all of the hours that he spent on this litigation even though most of his time was spent on unsuccessful claims, or whether Zimmerman's litigation efforts could be seen as having not produced any net benefit to Adhezion that could justify a fee, given that the expenses Adhezion incurred to defend against the Zimmerman's claims that the Court of Chancery found unmeritorious likely exceeded any benefit that would have resulted from the one claim of Zimmerman's the Court of Chancery found meritorious.

For the foregoing reasons, the judgment of the Court of Chancery awarding attorney's fees to Zimmerman's former counsel is **REVERSED**.

---

13. *Id.* (granting attorney's fees where the *defendants'* decision to enter into the very merger that the plaintiffs sought when they filed the litigation mooted the plaintiffs' claims).

14. *See, e.g., In re Fuqua Industries, Inc. S'holder Litig.,* 752 A.2d 126 (Del.Ch.1999) (explaining that "the mere fact that lawyers pursue their own economic interest in bringing derivative litigation cannot be held as grounds to disqualify a derivative plaintiff," but noting that "in some instances, the attorney in pursuit of his own economic interests may usurp the role of the plaintiff and exploit the judicial system entirely for his own private gain"); *Bird v. Lida, Inc.,* 681 A.2d 399, 402 (Del.Ch.1996) ("The derivative suit offers to risk-accepting shareholders and lawyers a method and incentives to pursue monitoring activities that are wealth increasing for the collectivity (the corporation or the body of its shareholders). Of course that remedy itself suffers from deep agency problems and can lead to a variety of problems....").