# Illinois Official Reports

## Appellate Court

---

### *Pfeiffer v. Begley*, 2015 IL App (2d) 140271

---

| | |
|---|---|
| Appellate Court Caption | MILTON PFEIFFER, Derivatively on Behalf of DeVry, Inc., Plaintiff-Appellant and Cross-Appellee, v. CHRISTOPHER B. BEGLEY, DAVID S. BROWN, GARY BUTLER, CONNIE R. CURRAN, DANIEL HAMBURGER, DARREN R. HUSTON, WILLIAM T. KEEVAN, LYLE LOGAN, JULIA A. McGEE, FERNANDO RUIZ, HAROLD T. SHAPIRO, RONALD L. TAYLOR, and LISA W. WARDELL, Defendants-Appellees and Cross-Appellants (DeVry, Inc., Nominal Defendant-Appellee and Cross-Appellant). |
| District & No. | Second District<br>Docket No. 2-14-0271 |
| Filed | February 19, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a shareholder derivative action against defendant corporation alleging breach of fiduciary duty, waste of corporate assets, and unjust enrichment based on the corporation's grant of more stock options to its chief executive officer as part of his compensation in 2010, 2011, and 2012 than were allowed in the corporation's 2005 shareholder-approved incentive plan, on appeal by both parties after the corporation provided the CEO with alternate compensation of equal value under a different incentive plan and granted plaintiff $75,000 in fees and $20,705 in costs, defendants failed to show that the trial court erred in finding that plaintiff was eligible for reimbursement of his fees and costs pursuant to the corporate-benefit doctrine after defendants resorted to a different incentive plan and he abandoned his suit, and a review of the record showed that the trial court's award was "based upon conscience and reason, as opposed to capriciousness or arbitrariness," and its factual findings were "the product of an orderly and logical deductive process" and were not an abuse of discretion. |

| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 12-CH-5105; the Hon. Paul M. Fullerton, Judge, presiding. |
| --- | --- |
| | |
| Judgment | Affirmed. |
| | |
| Counsel on Appeal | Vincent L. DiTommaso and Peter S. Lubin, both of DiTommaso-Lubin, P.C., of Oakbrook Terrace, and Eduard Korsinsky and Steven J. Purcell, both of Levi & Korsinsky, LLP, of New York, New York, for appellant. |
| | Michele L. Odorizzi, of Mayer Brown LLP, of Chicago, Timothy D. Elliott, of Rathje & Woodward, LLC, of Wheaton, and Kenneth J. Nachbar, of Morris, Nichols, Arsht & Tunnell LLP, of Wilmington, Delaware, for appellees. |
| | |
| Panel | JUSTICE McLAREN delivered the judgment of the court, with opinion. Justices Hudson and Spence concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff, Milton Pfeiffer, and defendants, Christopher B. Begley, David S. Brown, Gary Butler, Connie R. Curran, Daniel Hamburger, Darren R. Huston, William T. Keevan, Lyle Logan, Julia A. McGee, Fernando Ruiz, Harold T. Shapiro, Ronald L. Taylor, and Lisa W. Wardell (collectively, the Board), appeal from the trial court's order awarding $75,000 in attorney fees to Pfeiffer. We affirm.

¶ 2                                          I. BACKGROUND

¶ 3    On October 5, 2012, Pfeiffer, the owner of one share of DeVry, Inc., stock, filed a three-count shareholder derivative complaint against the Board (and, nominally, DeVry), alleging breach of fiduciary duty, waste of corporate assets, and unjust enrichment. According to Pfeiffer, the Board had granted to Hamburger (DeVry's chief executive officer and a member of the Board), as part of his compensation in 2010, 2011, and 2012, 159,725 more stock options than were allowed pursuant to DeVry's 2005 shareholder-approved incentive plan. Pfeiffer did not make a demand on the Board prior to filing suit; such a demand was "futile," according to Pfeiffer, because the "transactions at issue in this Action

did not result from a valid exercise of business judgment." In addition, Pfeiffer alleged that various members of the Board were incapable of objectively considering a demand because of a lack of independence. Among other things, Pfeiffer sought (1) rescission of the excess stock options, (2) damages sustained by DeVry, (3) reform of corporate governance and internal procedures, and (4) an award to him of "costs and disbursements of this action, including reasonable allowance of fees and costs for Plaintiff's attorneys, experts, and accountants."

¶ 4    Despite the claim that a demand would be futile, two months later, on December 17, 2012, DeVry filed amended forms with the Securities and Exchange Commission showing that any grants of stock options to Hamburger beyond the 150,000 per year under the 2005 plan were "ineffective"; thus, the number of options shown to be held by Hamburger was reduced. For 2010, Hamburger's nonqualified stock options (NQSOs) were reduced by 34,100, and his 2011 holdings were reduced by 20,200. However, DeVry explained that some of Hamburger's 2012 options were granted under a 2003 incentive plan rather than pursuant to the 2005 plan; thus, Hamburger's options were reduced by 17,515 instead of the 105,425 that Pfeiffer alleged were improperly awarded. In February 2013, DeVry awarded Hamburger "restrictive stock units" as compensation "to replace the value" of stock option grants, which Hamburger had been told he was receiving "but were not fulfilled to the extent they exceeded the number of stock options that may be granted" to an individual in one year under the 2005 plan.

¶ 5    On April 8, 2013, defendants filed a motion to dismiss pursuant to section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2012)), arguing that: (1) Pfeiffer's claims were now moot (section 2-619(a)(9)); and (2) Pfeiffer had not adequately alleged the futility of making a demand prior to filing suit (section 2-615). The trial court granted the motion to dismiss on the ground of mootness. While noting that Pfeiffer contended that a material issue of fact remained regarding the 2012 options, the court said that the only evidence before it on that issue showed "that they were awarded under a different plan, the 2003 plan." Thus, Hamburger had no more than 150,000 options for the years in question, and DeVry had "remedied the situation." The dismissal for mootness would be with prejudice upon adjudication of any fee petition filed by Pfeiffer. While the court's written order stated that the court "makes no ruling" on the section 2-615 motion regarding demand futility, the court orally stated that it was "in agreement" with defendants in that:

> "I don't believe that there were sufficient allegations, not that they couldn't be made; but based on the Complaint I had before me, those allegations, there weren't sufficient factual allegations to show the serious threat of liability, the violations were deliberate, intentional or some type of breach of loyalty or bad faith that would excuse the presuit demand or that a presuit demand would be futile."

The court subsequently denied Pfeiffer's motion to reconsider.

¶ 6    On September 25, 2013, Pfeiffer filed a petition for an award of attorney fees and expenses totaling $820,706. Pfeiffer argued that his instigation of the litigation secured "an immediate benefit" for DeVry of approximately $2.1 million (the value of the stock options "surrendered" by Hamburger) and long-term savings of $1.1 million from the "prevention of future wrongful option grants." Pfeiffer sought attorney fees of $800,000 (25% of the $3.2 million) plus costs of $20,706. Defendants responded that the lawsuit had not actually resulted in any real monetary benefit, because DeVry had provided Hamburger with alternate

compensation of equal value; they requested that the court deny Pfeiffer's petition in its entirety or, in the alternative, award "no more than $20,000 to $30,000 in fees under a *quantum meruit* theory." After hearing argument, the court found that the litigation created a "common fund" of $2.1 million for the benefit of DeVry shareholders, but it did "not accept" the alleged future savings of $1.1 million. The court granted $75,000 in fees and $20,706 in costs, the total amount being "just under 5 percent of that $2.1 million." The court also characterized the fee award as "a lot of fees for the amount of work performed." The appeal and cross-appeal then followed.

## II. ANALYSIS

We first note that DeVry is a Delaware corporation. Illinois courts apply the law of the state of incorporation. *Housman v. Albright*, 368 Ill. App. 3d 214, 218 (2006). Therefore, we will apply Delaware law.

Pfeiffer appeals from the trial court's award of fees, arguing that the court abused its discretion in fashioning that award. However, in their cross-appeal, defendants argue that Pfeiffer failed to show that he was entitled to any fee award. We will address the cross-appeal first.

## A. CROSS-APPEAL

The trial court found that the litigation created a "common fund" of $2.1 million for the benefit of DeVry shareholders. The "common fund" doctrine is a commonly recognized exception to the general, so-called American Rule, under which the prevailing party is responsible for the payment of his own attorney fees. *In re First Interstate Bancorp Consolidated Shareholder Litigation*, 756 A.2d 353, 357 (Del. Ch. 1999). Under this doctrine, a litigant who confers a common monetary benefit upon an ascertainable class is entitled to an allowance for fees and expenses, to be paid from the fund or property that his efforts have created. *Id*. Fees may be recovered even though the claims in the case had been mooted before a final judgment had been entered. See *id*.; *Crothall v. Zimmerman*, 94 A.3d 733 (Del. 2014). In such a case, the claims were rendered moot because of actions taken by the defendants, and those same actions simultaneously created the benefit that the plaintiff had been seeking and for which the plaintiff thus was entitled to have its fees paid. *Crothall*, 94 A.3d at 737-38.

Defendants argue that the trial court erred in considering only the value of the withdrawal of the improperly granted NQSOs in determining whether Pfeiffer's actions created an economic benefit. Instead, the court should have considered the "net economic benefit" achieved through Pfeiffer's litigation efforts. That is, the court should have considered that, after the options had been withdrawn, DeVry provided Hamburger with alternate compensation of approximately equal value. Thus, according to defendants, the withdrawal of the options was offset by the alternate compensation, leaving DeVry no better off than it had been before the filing of the lawsuit. Further, according to defendants, because their decision to "make Mr. Hamburger whole" after Pfeiffer pointed out their improper awards was "directly, causally linked" to Pfeiffer's complaint, that decision was material to whether Pfeiffer had conferred any net benefit on DeVry.

¶ 13     "Delaware law rewards plaintiffs' attorneys who provide a benefit to a Delaware corporation, even if the benefit does not produce immediate monetary rewards." *EMAK Worldwide, Inc. v. Kurz*, 50 A.3d 429, 430 (Del. 2012). The corporate-benefit doctrine provides that a plaintiff may be reimbursed for his fees and expenses if (1) the suit was meritorious when filed; (2) the defendants took an action that produced a corporate benefit before the plaintiff obtained a judicial resolution; and (3) the suit and the corporate benefit were causally related. *Id.* at 432. Under the "mootness rule," when a defendant takes an action that moots a suit, there is a rebuttable presumption that the suit and the benefit were causally related, because the defendant is in the best position to know the events, reasons, and decisions behind its action. *Id.* at 433. Typically, a successful derivative or class-action suit that results in the recovery of money or property wrongfully diverted from the corporation, or that results in the imposition of changes in internal operating procedures that are designed to produce such savings in the future, is viewed as a fund-creating action. *Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1164-65 (Del. 1989). The definition of a corporate benefit is elastic:

> "While the benefit achieved may have an indirect economic effect on the corporation, in the sense that the interests of the plaintiff class reflect a value not theretofore apparent, the benefit need not be measurable in economic terms. Changes in corporate policy or, as here, a heightened level of corporate disclosure, if attributable to the filing of a meritorious suit, may justify an award of counsel fees." *Id.* at 1165.

¶ 14     Defendants attempt to frame Pfeiffer's claim as procedural, rather than substantive. Pfeiffer never claimed that Hamburger was compensated excessively; he claimed only that elements of Hamburger's compensation violated the 2005 plan. Thus, while Pfeiffer was successful in his quest to get Hamburger's excess stock options cancelled, defendants merely changed the source of Hamburger's compensation, not the amount of the compensation. According to defendants, their decision to make Hamburger whole through alternate sources of compensation offset the benefit to DeVry, and the trial court should have considered this offset in its corporate-benefit analysis.

¶ 15     We find unpersuasive the cases cited by defendants in support of this argument. In *Louisiana State Employees' Retirement System v. Citrix Systems, Inc.*, No. Civ.A. 18298, 2001 WL 1131364 (Del. Ch. Sept. 19, 2001), the plaintiff challenged Citrix's planned amendment to its stock option plan. Citrix withdrew the amendment without ever issuing the proposed 10 million new options. The plaintiff asserted that the withdrawn option plan resulted in a benefit of $183 million to Citrix shareholders and sought attorney fees of $2 million plus expenses. *Id.* at *1. The court granted fees of $140,000 on a *quantum meruit* basis. *Id.* at *10 n.56.

¶ 16     Defendants' analysis of the chancery court's basis for declining to grant fees on a corporate-benefit basis is incomplete and misleading. As defendants note, the chancery court did state that the plaintiff's analysis failed to recognize possible benefits of the stock option plan, especially as related to employee morale, attraction, and retention. *Id.* at *7. However, this was only one shortcoming that the chancery court found in the plaintiff's analysis. It also found that there was no attempt to "offset" the plaintiff's proposed recovery with those alleged benefits. In addressing the defendants' claim that those possible benefits would offset the costs of dilution, the chancery court noted:

"Quantitatively speaking, any attempt by this Court to directly calculate the precise value of the employee recruitment, retention, and motivation effects provided by Proposal 3 seems more like ill-conceived alchemy than science." *Id*. at *8.

Ultimately, the chancery court could not "accurately value the net economic benefit conferred by either the passage or the withdrawal of Proposal 3." *Id*. However, the chancery court was not merely noting the difficulty of quantifying offset components; it was also addressing larger issues of stock market reactions, the difficulty of quantifying the dilutive effect of stock options that were never issued, and the difficulty of quantifying the value of stock options that were not liquid, freely tradable options. *Id*. at *7.[1]

¶ 17 Further, defendants' decision to "make Mr. Hamburger whole [with alternate compensation] once the error was pointed out" was not, as defendants argue, "directly, causally linked" to Pfeiffer's complaint in any but the most superficial way. Of course, defendants would not have had to make up for Hamburger's lost stock options if Pfeiffer had not brought suit and brought the improper compensation to light. However, defendants' decision to do so was purely discretionary; they were not *required* by Pfeiffer's suit to make up for that compensation. Defendants' decision, while maybe logical, was not inevitable, nor was it an imperative required by the lawsuit. It was a discretionary action made outside of the boundaries of the suit and its potential consequences.

¶ 18 Ultimately, defendants have failed to demonstrate that the trial court erred in finding that Pfeiffer was eligible to be reimbursed for his fees and expenses pursuant to the corporate-benefit doctrine as defined in *EMAK Worldwide, Inc.*, 50 A.3d 429. See *supra* ¶ 13. Therefore, we affirm the trial court as to defendants' cross-appeal.

¶ 19                              B. PFEIFFER'S APPEAL

¶ 20 Pfeiffer contends that the trial court erred in awarding him attorney fees and expenses totaling only 3.5% of the $2.1 million benefit that his action conferred on DeVry and its shareholders. This court will review a fee award for an abuse of discretion. *EMAK Worldwide, Inc*., 50 A.3d at 432. We will not substitute our own notions of what is right for those of the trial judge if that judgment was based upon conscience and reason, as opposed to capriciousness or arbitrariness, and we will not set aside or overturn factual findings unless they are clearly wrong and justice requires it, or they are not the product of an orderly and logical deductive process. *Id*.

¶ 21 Typically, when a plaintiff's efforts on behalf of a corporation result in the creation of a quantifiable common fund, the court will use a percentage-of-the-benefit approach in determining an award of attorney fees and costs. *Americas Mining Corp. v. Theriault*, 51 A.3d 1213, 1255 (Del. 2012). Delaware courts use the factors set out in *Sugarland Industries, Inc. v. Thomas*, 420 A.2d 142, 149-53 (Del. 1980), to determine an award's amount. *EMAK Worldwide, Inc.*, 50 A.3d at 433. These factors are: (1) the results achieved; (2) the time and effort of counsel; (3) the complexity of the issues; (4) whether counsel was working on a contingent basis; and (5) counsel's standing and ability. *Id*. at 433 n.22. The first factor, the

---

[1]Defendants' reliance on *Crothall*, 94 A.3d 733, is even more misplaced, as that case involved a plaintiff's attorney seeking to obtain fees on a corporate-benefit basis after the plaintiff *abandoned* his lawsuit.

benefit achieved, is considered the most important. See *Americas Mining Corp.*, 51 A.3d at 1255.

¶ 22    There is no argument that the trial court failed to apply the *Sugarland* factors. Indeed, the court specifically addressed each factor and announced in whose favor each factor weighed. The court found a common fund of $2.1 million and awarded attorney fees of $75,000 plus costs of $20,706. The court noted that the total of $95,706 was "just under 5 percent" of the common fund and expressed its belief that "that's a lot of fees for the amount of work performed."

¶ 23    However, Pfeiffer argues that the court abused its discretion, "inexplicably" granting a "paltry" 3.5% of the common fund in attorney fees. Pfeiffer requested 25% of the benefit in his fee petition and argues that courts have recently granted fees in the range of 25% to 33% of the benefit. Most of Pfeiffer's argument involves citations to cases in which Delaware courts awarded fees in that range and his contention that "the Circuit Court did not appear to give *any* weight to the fee awards in similar cases." (Emphasis in original.) However, fee awards in other cases was not a factor that the trial court was required to consider. The trial court specifically addressed every factor required. Our review of the record indicates that this award was "based upon conscience and reason, as opposed to capriciousness or arbitrariness," and that the court's factual findings were "the product of an orderly and logical deductive process." *EMAK Worldwide, Inc.*, 50 A.3d at 432. Thus we find no abuse of discretion.

¶ 24                                    III. CONCLUSION

¶ 25    For these reasons, the judgment of the circuit court of Du Page County is affirmed.


¶ 26    Affirmed.