EFiled:  Jun 29 2016 01:27PM EDT
Transaction ID 59209460
Case No. 10287-VCS

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

MARVIN SMOLLAR, derivatively on behalf    :
of VITALSPRING TECHNOLOGIES, INC.,    :
    :
    Plaintiff,    :
    :
    v.    :    **C.A. No. 10287-VCS**
    :
SREEDHAR V. POTARAZU,    :
    :
    Defendant,    :
    :
    and    :
    :
VITALSPRING TECHNOLOGIES, INC.,    :
    :
    Nominal Defendant.    :

## MEMORANDUM OPINION

Date Submitted:  May 23, 2016
Date Decided:  June 29, 2016

Sidney S. Liebesman, Esquire and Lisa Zwally Brown, Esquire of Montgomery, McCracken, Walker & Rhoads, LLP, Wilmington, Delaware, and Gustavo F. Bruckner, Esquire, Anna Karin F. Manalaysay, Esquire, and Samuel J. Adams, Esquire of Pomerantz LLP, New York, New York, Attorneys for Plaintiff.

David L. Finger, Esquire of Finger & Slanina, LLC, Wilmington, Delaware, Attorney for Defendant and Nominal Defendant.

Robert D. Goldberg, Esquire of Biggs and Battaglia, Wilmington, Delaware, Attorney for the Special Review Committee of VitalSpring Technologies, Inc.

Kathleen M. Miller, Esquire and Robert K. Beste, Esquire of Smith, Katzenstein & Jenkins LLP, Wilmington, Delaware, Attorneys for Objectors Jeffrey Waters, Abraham Hannink, Marijke van Dam, Paul van Riel, Britt Family Investments LLC, the Kenneth F. Logue Revocable Declaration of Trust DTD, Ray Rice, Rohit Kishore, Nand Kishore, Shard Tak, and Ulrich Werner).

SLIGHTS, Vice Chancellor

Plaintiff's counsel in this derivative action seek an interim award of attorneys' fees following a failed attempt to secure court approval of a settlement that provided a "unique and personal" benefit to Plaintiff at the expense of the company and stockholders he purported to represent.[1] Interim fee awards are generally disfavored by this Court and are awarded only in cases where a particular exigency or other special circumstance exists. This is not that case. Any tangible benefit this plaintiff or his counsel might have secured for the company and its stockholders was washed away when the settlement that captured those benefits was rejected by the Court as a consequence of Plaintiff's overreaching. Rather than attempt to recapture those benefits, Plaintiff has advised the Court that he will withdraw from the case to make room for another stockholder to prosecute claims on behalf of the company. Given the botched settlement and the expressed intention of this plaintiff to exit the litigation after having achieved virtually nothing, Plaintiff's counsel's request for interim fees on the way out the door is made with little grace. The motion is DENIED and Plaintiff and his counsel are disqualified from further participation in this litigation.

---

[1] *Smollar v. Potarazu*, 2016 WL 206288, at *1, *3 (Del. Ch. Jan. 14, 2016) (rejecting settlement).

# I. BACKGROUND

Plaintiff, Marvin Smollar ("Smollar"), initiated this derivative action in October 2014. In his Complaint, Smollar made serious allegations of wrongdoing against defendant, Sreedhar Potarazu ("Potarazu"), in connection with Potarazu's management of nominal defendant, VitalSpring Technologies, Inc. ("VitalSpring"). Specifically, Smollar alleged, *inter alia*, that Potarazu, the sole member of the VitalSpring board of directors (the "Board"), breached his fiduciary duties by misrepresenting facts to stockholders regarding a proposed buyout transaction, committing waste and diverting corporate assets to himself for personal use. Smollar sought damages, appointment of a receiver and the imposition of governance reforms.

In response to the Complaint, on November 6, 2014, Potarazu caused VitalSpring to form a Special Review Committee (the "SRC") to investigate Smollar's allegations.[2] On March 2, 2015, the SRC issued its third report in which it concluded that Smollar's allegations should be further investigated and that dismissal of the action was not in the best interests of the VitalSpring stockholders. Shortly thereafter, the SRC executed an abrupt about-face when it filed a motion to

---

[2] A question has been raised in the briefing regarding whether the SRC has any authority to act for the Board since it is comprised of VitalSpring stockholders who do not serve on the Board. The Court need not decide this issue to decide the request for interim attorneys' fees.

dismiss in order to facilitate a settlement negotiated between Smollar and Potarazu (the "Settlement Agreement").

The Settlement Agreement purported to secure the following benefits for VitalSpring and its stockholders: (1) a commitment that the company would prepare and make available GAAP financials for the preceding fiscal year, (2) the addition of one member to the Board who is not appointed by Potarazu, (3) a requirement that a majority of the minority unaffiliated stockholders must vote to approve certain corporate acts, (4) a commitment that, if VitalSpring converts to any other business structure, (i) the new structure will be formed under Delaware law and will be subject to the jurisdiction of Delaware courts and (ii) VitalSpring will not adopt a fee shifting bylaw, (5) VitalSpring's retention of an independent auditor, and (6) disclosure on VitalSpring's website of the members of the Board, and the renaming of the "Board of Advisors" to the "Advisory Panel." In addition, Smollar contends that the formation of the SRC and Potarazu's commitment to hold an annual stockholders meeting are added benefits achieved as a result of his litigation efforts.

On January 14, 2016, this Court issued a letter opinion rejecting the Settlement Agreement. The Court reasoned that while the agreement "achieved what [Smollar] intended for the benefit of VitalSpring,"[3] it also afforded Smollar a

---

[3] *Smollar*, 2016 WL 206288, at *3.

3

unique and personal benefit: "VitalSpring . . . committed to buy [Smollar's] VitalSpring stock at the price Smollar paid fifteen years ago—$473,153.64, or roughly $0.16 per share,"[4] but did not offer the same deal to other VitalSpring stockholders. In rejecting the settlement the Court noted that while "the Special Review Committee supports the proposed settlement because of the relief achieved by Smollar, . . . it does not appear to have properly assessed the potential consequences of Smollar's personal benefit and how that personal benefit calls into question the settlement's fairness and reasonableness."[5]

The docket reflects that Smollar did nothing to advance the litigation following the Court's rejection of the settlement. His next filing came approximately two weeks later, on February 9, 2016, when he filed the Motion for an Interim Award of Attorneys' Fees and Expenses *sub judice* ("the Motion").

A group comprised of several VitalSpring stockholders objected to the settlement proposed by Smollar and endorsed by the SRC. That group, now joined by a revocable trust that holds VitalSpring shares (the "Objectors"), has filed an opposition to the Motion objecting to the request for interim fees and seeking an order disqualifying Smollar and his counsel for lack of standing. Potarazu and VitalSpring, as nominal defendant, also oppose the request for interim fees.

---

[4] *Id.* at *1.

[5] *Id.* at *3.

4

## II. ANALYSIS

The Motion and the oppositions thereto raise two issues: (A) whether Smollar and his counsel should be disqualified from prosecuting this action further after they presented to the Court a settlement that attempted to secure personal benefits for Smollar that were not secured for the other VitalSpring stockholders; and (B) whether Smollar's counsel is entitled to an interim award of fees. These issues will be addressed in turn.

### A. Disqualification of Smollar and his Counsel

According to the Objectors, Smollar and his counsel "betrayed [their] duties [as representative plaintiffs] and failed to act appropriately in that capacity, by improperly attempting to use Smollar's position to secure personal benefits for Smollar himself."[6] As a consequence of this self-dealing and breach of fiduciary duty, the Objectors assert that the Court must disqualify Smollar and his counsel and deny their request for interim fees. Smollar responds that the Court has not yet determined that he or his counsel breached fiduciary duties in connection with the rejected Settlement Agreement. He also contends that "[he] was able to achieve

---

[6] Objectors' Answering Br. in Opp'n to Smollar's Req. for an Award of Att'ys' Fees and Expenses 3.

much of, if not most of, the relief which he sought" on behalf of the VitalSpring and its stockholders.[7]

To qualify as a derivative plaintiff, an individual must not only continuously hold stock in the subject corporation,[8] but also must "qualif[y] to serve in a fiduciary capacity as a representative of a class, whose interest is dependent upon the representative's adequate and fair prosecution."[9] This Court considers eight factors when assessing whether a proposed derivative plaintiff will adequately represent a class:

(1) economic antagonisms between the representative and the class;

(2) the remedy sought by plaintiff in the derivative litigation;

(3) indications that the named plaintiff was not the driving force behind the litigation;

(4) plaintiff's unfamiliarity with the litigation;

(5) other litigation pending between plaintiff and defendants;

(6) the relative magnitude of plaintiff's personal interests as compared to her interest in the derivative action itself;

(7) plaintiff's vindictiveness toward defendants; and

(8) the degree of support plaintiff was receiving from the shareholders she purported to represent.[10]

---

[7] Pl.'s Reply Br. in Further Supp. of Mot. for an Interim Award of Att'ys' Fees and Expenses ("Pl.'s Reply Br."), at 2 (quoting *Smollar*, 2016 WL 206288, at *1).

[8] *Quadrant Structured Prods. Co., Ltd. v. Vertin*, 115 A.3d 535, 552 (Del. Ch. 2015).

[9] *Youngman v. Tahmoush*, 457 A.2d 376, 379 (Del. Ch. 1983).

[10] *In re Fuqua Indus., Inc. S'holder Litig.*, 752 A.2d 126, 130 (Del. Ch. 1999).

If the derivative plaintiff operates under or creates a conflict of interest with the other stockholders during the course of the prosecution of the action, the Court may look to that factor alone in determining that the plaintiff is not an adequate representative and lacks standing to prosecute the action.[11]

Not only did Smollar seek Court approval of a settlement in which he would receive a substantial personal benefit not available to other stockholders, he has also stated his intention, notwithstanding the Court's rejection of the proposed Settlement Agreement, to forego any further prosecution of the action. This is particularly troubling given the very serious allegations of misconduct against Potarazu that Smollar raised in his Complaint.

This Court already has found that Smollar's "self-dealing and grasping for a personal benefit drifts far from the conduct expected of a fiduciary."[12] Having made this finding, the Court can discern no reason for Smollar to remain in this

---

[11] *Youngman*, 457 A.2d at 381 (Del. Ch. 1983) (the party seeking disqualification "must show a substantial likelihood that the derivative action is not being used as a device for the benefit of all the stockholders"). *See also In re Banyan Mortg. Inv. Fund S'holders Litig.*, 1997 WL 428584, at *6 (Del. Ch. July 23, 1997); *Fuqua*, 752 A.2d at 130 ("*Youngman* stands for the proposition that if a derivative plaintiff is to be disqualified by a strong showing of only one factor, that factor must involve some conflict of interest between the derivative plaintiff and the class.").

[12] *Smollar*, 2016 WL 206288, at *3 (noting that the "special benefit for Smollar fully undercuts any appearance that the settlement is fair and reasonable to the other stockholders who apparently remained locked into their equity positions with no certain or even probable exit strategy").

7

action other than to attempt to collect an award of interim fees for his counsel.[13]

He and his counsel have demonstrated that they are no longer adequate representatives of the company or its stockholders.[14] Objectors' request that the Court disqualify Smollar and his counsel is GRANTED.[15]

## B. Interim Attorneys' Fees

"Interim fee awards are generally disfavored."[16] Nevertheless, in "exigent or other special circumstances,"[17] this Court will grant a request for an award of interim fees and expenses where (1) "the plaintiff has achieved the benefit sought by the claim . . . and [(2)] that benefit is not subject to reversal or alteration as the

---

[13] In attempting to justify his application for interim fees, Smollar notes that while he "does not oppose the intervention of Objectors and has no intention at this time of seeking further relief in this Action, [he] has not yet stepped away from the case, and is still the Plaintiff of record." Pl.'s Reply Br. 17.

[14] I note that this is aberrant behavior for Smollar's Delaware counsel who have well-earned a reputation of conducting themselves in this Court consistent with the finest traditions of the Delaware Bar.

[15] *In re M & F Worldwide Corp. S'holders Litig.*, 799 A.2d 1164, 1174 n.34 (Del. Ch. 2002) ("By now it is well established that by asserting a representative role on behalf of a proposed class, representative plaintiffs *and their counsel* voluntarily accept a fiduciary obligation towards members of the putative class." (emphasis added)). Here, Smollar's counsel negotiated the self-serving Settlement Agreement on behalf of Smollar, and all justifications for disqualifying Smollar as representative plaintiff apply equally to his counsel.

[16] *Frank v. Elgamal*, 2011 WL 3300344, at *3 (Del. Ch. July 28, 2011) ("The basis for disfavoring interim fee awards is that '[j]udicial economy and the orderly conduct of litigation are usually better served if interim awards of attorneys' fees are avoided.'" (alterations in original) (quoting *Gans v. MDR Liquidating Corp.*, 1993 WL 193526, at *1 (Del. Ch. May 28, 1993))).

[17] *In re Novell, Inc. S'holder Litig.*, 2011 WL 4091502, at *5 (Del. Ch. Aug. 30, 2011).

remaining portion of the litigation proceeds."[18]   Here, Smollar has failed to establish that his request for interim fees satisfies either prong.

As support for the argument that his litigation efforts have achieved substantial benefits for VitalSpring and its stockholders, Smollar makes much of the Court's acknowledgment in its January 14, 2016 letter opinion that "Smollar was able to achieve much of, if not most of, the relief which he sought."[19]   The Court made this observation, however, when analyzing the adequacy of the benefits to VitalSpring that Smollar proffered in support the Settlement Agreement.  Without an agreement binding VitalSpring to implement any of the negotiated governance reforms, Smollar cannot be heard to argue that the benefits he allegedly achieved for the company and its stockholders are "not subject to reversal or alteration as the remaining portion of the litigation proceeds."[20]   To the contrary, each of the benefits listed in the Settlement Agreement is subject to immediate reversal following the Court's rejection of the settlement.

The only benefits permanently conferred on VitalSpring thus far by virtue of this litigation are a single annual meeting of stockholders that has been described

---

[18] *La. State Empls.' Ret. Sys. v. Citrix Sys., Inc.*, 2001 WL 1131364, at *4 (Del. Ch. Sept. 19, 2001).

[19] *Smollar*, 2016 WL 206288, at *1.

[20] *La. State Empls.' Ret. Sys.*, 2001 WL 1131364, at *4.

9

by the Objectors as perfunctory, and one round of disseminated GAAP financials.[21]

Without more, the Court cannot conclude that the fleeting benefits reflected in the now-rejected Settlement Agreement are sufficient to warrant an award of interim fees.[22] This is especially so given that the requested fees, $540,000, are equal to the amount requested by counsel in connection with the proposed Settlement Agreement at a time when they believed they had secured the benefits memorialized in that agreement, such as they were, for the company and its stockholders.[23]

---

[21] Tr. of Oral Arg. on Pl.'s Mot. for Interim Fees and Expenses 16–20. These benefits stand in stark contrast to the allegations of wrongdoing set forth in Smollar's complaint and his prayers for relief. In his Complaint, Smollar sought not only the governance reforms rendered transitory by this Court's rejection of the proposed Settlement Agreement, but also "damages sustained by [VitalSpring] as a result of Potarazu's alleged breach of fiduciary duty, gross mismanagement and waste." Verified Shareholder Derivative Compl. ¶ 26.

[22] *Crothall v. Zimmerman*, 94 A.3d 733, 738 (Del. 2014) ("A plaintiff who generates a favorable trial court decision on a closely contested issue of corporate governance but then abandons his claim and renders the decision moot before it becomes final has not created a corporate benefit, he has merely caused uncertainty.").

[23] The Court acknowledges that Smollar's request for fees does satisfy several of the so-called *Sugarland* factors, including that his counsel put substantial effort into the case leading up to the settlement, the issues were relatively complex and counsel was working on a contingent fee basis. *See Sugarland Industries, Inc. v. Thomas*, 420 A.2d 142 (Del. 1980). Even so, the failure ultimately to deliver any significant lasting benefit to the stockholders, the most important of the *Sugarland* factors, is fatal to the request. *Seinfeld v. Coker*, 847 A.2d 330, 336 (Del. Ch. 2000) (holding that a measurement of the results achieved is most important when addressing a request for fees from the common fund); *Sutherland v. Sutherland*, 2014 WL 3906500, at *5 (Del. Ch. July 31, 2014) (devaluing speculative benefits in the context of a fee application).

Finally, I return to the implications of Smollar's definitive statement that his "[c]ounsel will not be prosecuting this case further."[24] While his counsel seeks interim fees and not a mootness award, this Court's *orbiter dictum* in the context of the latter is instructive: "if a client quits the litigation and renders his claim moot, it is not obvious why the lawyer would be personally permitted to sue the corporation for having represented a former client, especially in litigation in which the client was largely unsuccessful and which caused the corporation great expense."[25] Though Smollar argues that he has not yet voluntarily stepped away from this case, his sole purpose for remaining is to achieve an interim fee award for his attorneys. Moreover, the Court has now granted Objectors' request to disqualify Smollar as derivative plaintiff. Under these circumstances, having lost standing, Smollar and his counsel no longer have a legitimate entitlement to counsel fees.

## III. CONCLUSION

For the reasons stated herein, Objectors' request to disqualify Smollar as derivative plaintiff is granted, and Smollar's request for an interim award of attorneys' fees and expenses is denied.

**IT IS SO ORDERED.**

---

[24] Pl.'s Opening Br. in Supp. of Pl.'s Mot. for an Interim Award of Att'ys' Fees and Expenses, at 5.

[25] *Crothall*, 94 A.3d at 735 n.6.