TANDYCRAFTS, INC., R.E. Cox, III, Roger A. Dickinson, Kenneth L. Gregson, William H. Michero, Joe K. Pace, Robert Schutts, and John A. Wilson, Defendants Below, Appellants,

v.

INITIO PARTNERS, Plaintiff Below, Appellee.

Supreme Court of Delaware.

Submitted: Dec. 13, 1988.
Decided: July 3, 1989.

William Prickett (argued), Vernon R. Proctor and Philip B. Obbard, Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, and Satterlee Stephens Burke & Burke, New York City of counsel, for appellants.

David A. Drexler (argued), Morris, Nichols, Arsht & Tunnell, Wilmington, and David J. Bershad, Milberg Weiss Bershad Specthrie & Lerach, New York City, of counsel, for appellee.

Before CHRISTIE, C.J., HORSEY and WALSH, JJ.

WALSH, Justice:

This is an appeal from a Court of Chancery decision which awarded counsel fees to a plaintiff shareholder who voluntarily dismissed an individual action against a corporation and its directors after certain corrective action was taken by the corporation during a proxy contest. The Court of Chancery determined that the litigation, although moot, conferred a significant benefit upon all shareholders and granted plaintiff's application for fees in the amount of $180,000. The corporation asserts that the Vice Chancellor abused his discretion in awarding counsel fees for litigation which conferred no benefit on the corporation. It is also asserted that, since plaintiff did not purport to sue derivatively or on behalf of a class, plaintiff is not entitled to an award of counsel fees.

We hold that, under certain circumstances, counsel fees may be awarded to an individual shareholder whose litigation effort confers a benefit upon the corporation, or its shareholders, notwithstanding the absence of a class or derivative component. We further conclude that, under the circumstances of this case, the Court of Chancery did not abuse its discretion in making an award of counsel fees to an individual shareholder or in fixing the amount of the award.

I

Plaintiff, Initio Partners ("Initio"), a limited partnership, was, at the time of the commencement of this litigation, the largest single independent shareholder of Tandycrafts, Inc. ("Tandycrafts"), owning approximately 9.9% of the company's common stock. In the spring of 1986 Initio approached Tandycrafts' management with the prospect of Initio acquiring a larger, and perhaps controlling, interest in the company through a cooperative effort between the parties. Apparently, this approach was rebuffed and Tandycrafts' management determined to place before its shareholders, for consideration at its next annual meeting, two charter amendments which would limit any future takeover effort. The effect of the proposed amendment was to impose an 80% supermajority voting requirement for takeover proposals made without director approval.

On October 27, 1986, Initio filed a complaint in the Court of Chancery which sought a preliminary injunction to enjoin the holding of Tandycrafts' annual meeting, scheduled for November 12, 1986. The complaint alleged that the proxy material issued in connection with the proposed charter amendments was materially misleading. In essence, Initio contended that the proxy material failed to place the supermajority voting requirement in the proper context because it did not disclose that the combined effect of the share holdings of Tandycrafts' employee benefit plan (10.9%) and stock owned by management (7.5%) rendered the attainment of an 80% supermajority vote virtually impossible. Initio also attacked the portions of the proxy material which described those who were disqualified from participating in the supermajority voting, as well as the definition of the pool of shares which constituted the 80% threshold.

In addition to seeking injunctive relief, Initio also launched its own proxy campaign in which it sought to counter what it viewed as distortions in Tandycrafts' proxy material. In the meantime, while discovery was proceeding on an expedited basis, Tandycrafts prepared and distributed to its

shareholders a supplement to its proxy statement. This supplemental statement, dated November 1, 1986, disclosed the combined holdings of the employee benefit plans and the management controlled shares. It also clarified the proposed amendments' limitation on the participation of an "Interested Stockholder" and an "Interested Officer."

In ruling on Initio's request for a preliminary injunction, the Vice Chancellor noted the corrective action taken by Tandycrafts through the Supplemental Proxy Statement. While acknowledging Initio's continued objection to the proxy material as modified, and after finding that the proxy material "could be clearer," the court ruled that the proxy material provided sufficient information on matters deemed important to shareholders. Injunctive relief was accordingly denied and the annual meeting ensued as scheduled. At the meeting, the proposed charter amendments were soundly defeated.

In the light of the defeat of the proposed charter amendments and viewing the litigation as moot, Initio filed a motion to dismiss the action together with an application for attorneys' fees and expenses, in the amount of $180,000, to be assessed against Tandycrafts. Tandycrafts vigorously opposed the request for counsel fees, contending that its action in making "technical corrective changes" in its proxy material was not attributable to Initio's litigation and that such corrections would have been made regardless of whether Initio, or any other shareholder, had sought such clarification. The Vice Chancellor determined that Initio's application for counsel fees met the test announced in *Allied Artists Pictures Corp. v. Baron*, Del.Supr., 413 A.2d 876 (1980) (Award of attorneys' fees granted even though claim became moot because claim was meritorious when filed and caused defendants to take action benefitting the corporation or its shareholders, which benefit was causally related to the lawsuit). The Vice Chancellor concluded that Tandycrafts' immediate correction of the proxy material conferred a clear benefit to all shareholders expected to vote at the pending meeting. The court further

ruled that Tandycrafts had failed to demonstrate both a lack of causal connection between Initio's suit and its corrective action and the existence of an ulterior motive on the part of Initio.

On appeal, Tandycrafts, in addition to disputing the reasonableness of the fees sought by Initio, argues that the Vice Chancellor erred in his implicit finding that a party suing directly for his own benefit, and not on behalf of a class or derivatively, is entitled to an award of counsel fees against the corporation. The latter issue poses a question of first impression in this Court.

## II

■ The standards which control the award of counsel fees in shareholder litigation in the Court of Chancery have become fairly well established. The starting principle is recognition of the so-called American Rule, under which a prevailing party is responsible for the payment of his own counsel fees in the absence of statutory authority or contractual undertaking to the contrary. *Walsh v. Hotel Corp. of America*, Del.Supr., 231 A.2d 458, 462 (1967); *Maurer v. International Re–Insurance Corp.*, Del.Supr., 95 A.2d 827, 830 (1953). While decisional-based exceptions have evolved sparingly, it is now established that "fee-shifting" may be required in certain restricted cases. Thus, under the "equity" exception a litigant may secure an award of counsel fees upon a showing of bad faith by an opposing party. *Division of Child Support Enforcement v. Smallwood*, Del.Supr., 526 A.2d 1353, 1356–57 (1987).

■ In the realm of corporate litigation, the Court may order the payment of counsel fees and related expenses to a plaintiff whose efforts result in the creation of a common fund, *Weinberger v. UOP, Inc.*, Del.Ch., 517 A.2d 653, 654–55 (1986), or the conferring of a corporate benefit. *Chrysler Corp. v. Dann*, Del.Supr., 223 A.2d 384, 386 (1966). Typically, successful derivative or class action suits which result in the recovery of money or property wrongfully

diverted from the corporation, or which result in the imposition of changes in internal operating procedures that are designed to produce such monetary savings in the future, are viewed as fund creating actions. *See CM & M Group, Inc. v. Carroll,* Del. Supr., 453 A.2d 788, 795 (1982).

■ The definition of a corporate benefit, however, is much more elastic. While the benefit achieved may have an indirect economic effect on the corporation, in the sense that the interests of the plaintiff class reflect a value not theretofore apparent, the benefit need not be measurable in economic terms. Changes in corporate policy or, as here, a heightened level of corporate disclosure, if attributable to the filing of a meritorious suit, may justify an award of counsel fees. *See Chrysler Corp. v. Dann,* 223 A.2d at 386; *Allied Artists Pictures Corp. v. Baron,* 413 A.2d at 878.

■ Once it is determined that action benefiting the corporation chronologically followed the filing of a meritorious suit, the burden is upon the corporation to demonstrate "that the lawsuit did not in any way cause their action." *Allied Artists Picture Corp. v. Baron,* 413 A.2d at 880. Finally, in the fixing of the amount of the award the Court of Chancery enjoys a level of discretion which this Court will disturb only upon a clear showing of abuse of such discretion. *Chrysler Corp. v. Dann,* 223 A.2d at 389.

■ Tandycrafts' principal argument on appeal is analogous to a lack of standing contention, *i.e.,* Initio, as a plaintiff suing directly for its own benefit, lacks the requisite status to receive an award of counsel fees. Tandycrafts further assumes that the Vice Chancellor, tacitly but incorrectly, viewed Initio as suing on behalf of a class or in a representative capacity when in fact it sued individually. While the Vice Chancellor did not directly consider whether Initio was a representative plaintiff, he analyzed the benefit accrued as one inuring to all shareholders. Since Initio concedes in this appeal that it proceeded in the Court of Chancery as an individual, we consider this issue to be before us despite the lack of a definitive ruling by the Court of Chancery.

In any event, given the novelty of the question and the indication that it was argued by Tandycrafts at the trial level, we shall rule upon it. Supr.Ct.R. 8.

Tandycrafts' claim that an award of counsel fees to an individual shareholder is unprecedented under Delaware decisional law is correct in the sense that it appears that neither this Court nor the Court of Chancery has precisely so held. But a close reading of the Court of Chancery decision in *Baron v. Allied Artists Pictures Corp.,* Del.Ch., 395 A.2d 375 (1978), *aff'd.* Del.Supr., 413 A.2d 876 (1980), indicates that the plaintiff in that action sued as an individual stockholder challenging the election of directors under 8 *Del.C.* §§ 225 and 227. *Id.* at 383 n. The corporation and the director defendants did not raise the plaintiff's individual status as a bar to the counsel fee application. The Court of Chancery, while noting plaintiff's individual stance, nonetheless proceeded to apply the standards which govern fee awards in derivative actions. *Id.* at 383. On appeal, this Court, in affirming the award of counsel fees, noted that the claimed benefit to the corporation was to be measured at the time of the filing of the action even though the suit was mooted by a later event, a corporate merger, which arguably produced the benefit independent of the litigation. *Allied Artists Pictures Corp. v. Baron,* 413 A.2d at 878–79.

We do not agree with Tandycrafts' assertion that the Court of Chancery's implicit approval in *Baron* of the individual action benefit basis for the award of counsel fees was effectively overruled by this Court's holding in *CM & M Group v. Carroll, Inc.,* 453 A.2d at 795. In *Carroll,* this Court upheld the denial of counsel fees in an individual action under 8 *Del.C.* § 220 where a minority shareholder of a closely held corporation sought inspection of corporate books and records for the avowed purpose of valuing his shares. *Id.* at 795–96. In rejecting the plaintiff's claim that his efforts fall within the "common fund" exception this Court declined to expand that concept to include actions to protect books and records as common property of

the corporation. This Court's holding in *Carroll* was not directed to the plaintiff's status but to the lack of a perceived corporate benefit. *Id.* We find that ruling clearly inapposite to *Baron's* implicit recognition of the right of an individual shareholder to seek an award of counsel fees for the conferring of a corporate benefit.

Although this Court has not adopted an expansive approach to fee shifting in corporate litigation, the critical inquiry is not the status of the plaintiff but the nature of the corporate or class benefit which is causally related to the filing of suit. It is to be expected that litigation to force compliance with fiduciary standards or statutory duties will be initiated by a shareholder who has standing to sue for the benefit of the corporation. For the most part, such claims are clearly derivative, or class based. But where the shareholder's individual interests are directly and equally implicated, as in proxy contests, the distinction between individual and representative claims may become blurred. Indeed, the same wrong may give rise to both an individual and derivative action. *Cf. Lipton v. News Int'l, PLC*, Del.Supr., 514 A.2d 1075, 1079 (1986) (Shareholder who suffers injury peculiar to self should be able to maintain an individual action, even though corporation also suffers injury from same wrong).

The standard which governs the allowance of counsel fees in equity is not inclusive of all occasions when such fees may be sought. The concept is a flexible one based on the historic power of the Court of Chancery to do equity in particular situations. *Maurer v. Int'l Re–Insurance Corp.*, 95 A.2d at 831. If, as here, the shareholder commences an individual action with consequential benefit for all other members of a class, or for the corporation itself, there is no justification for denying recourse to the fee shifting standard which has evolved for the therapeutic purpose of rewarding individual effort which flows to a class. We believe the better reasoned approach to be that there is no class action or derivative suit prerequisite to an award of attorneys' fees under the common benefit exception. *See Reiser v. Del Monte Properties Co.*, 9th Cir., 605 F.2d 1135,

1139 (1979). We adopt the reasoning in *Reiser* that the "[i]mposition of a class action requirement would be inconsistent with the equitable foundations of the common benefit exception.... The form of suit is not a deciding factor; rather, the question to be determined is whether a plaintiff, in bringing a suit either individually or representatively, has conferred a benefit on others." *Id.* at 1139–40.

Tandycrafts also contends that permitting an individual plaintiff to seek the allowance of counsel fees creates the potential for abuse since such an individual will have initiated litigation without compliance with the demand requirements of Court of Chancery Rule 23.1, or without the usual class obligations assumed in a representative capacity. This concern is legitimate. An individual plaintiff may not seek to circumvent the standards which restrict the pursuit of derivative or class suits. These requirements are more than mere formalities of litigation but strictures of substantive law. *See Aronson v. Lewis*, Del.Supr., 473 A.2d 805 (1984); *Pogostin v. Rice*, Del. Supr., 480 A.2d 619 (1984). While compliance is the norm, situations may arise, particularly in rapidly evolving contests for corporate control, including, as here, proxy contests, in which challenged transactions may become moot or superceded before appropriate demand can be made with any realistic hope of corrective action being taken by incumbent management. An individual shareholder in such circumstances is not foreclosed from commencement of an individual action to implement his right to informed participation in the corporate election process.

■ In the final analysis, however, the concern that individual plaintiffs may abuse the pre-suit and representative requirements and thereafter seek an award of counsel fees is offset by the plenary power of the Court of Chancery over the allowance of such fees. In this respect, an individual plaintiff is subject to essentially the same review process as would a derivative plaintiff who seeks the allowance of counsel fees incident to court approval of a derivative action pursuant to Court of

 

Chancery Rule 23.1. A petitioning individual plaintiff is thus subject to the same close scrutiny to ensure that the elements required under the common fund or conferred benefit are present, *i.e.*, (a) the claim was meritorious when filed; (b) the action was benefitting the corporation; or a class was created prior to judicial resolution of the suit; and (c) the benefit was causally related to the lawsuit. In applying these tests the Court of Chancery has broad discretion to deny fees to an individual plaintiff whose suit would not have been meritorious had demand on the corporation been practical or effective.

### III

 Having concluded that, under these circumstances, Initio had standing to seek an award of counsel fees as an individual plaintiff, we summarily address Tandycrafts' claim that the Vice Chancellor abused his discretion in the fee allowance. The sequence of events is not in dispute and the correction or clarification of the proxy material chronologically followed the filing of the Initio suit attacking the accuracy of the material. It was thus incumbent upon Tandycrafts to demonstrate that there was no causal connection between the suit and the subsequent action. *See McDonnell Douglas Corp. v. Palley*, Del. Supr., 310 A.2d 635, 637 (1973). Although Tandycrafts argues that the corrective action would have been taken in any event, we are not persuaded that the Vice Chancellor abused his discretion in ruling to the contrary.

With respect to the amount of the fees allowed, the Vice Chancellor noted that Tandycrafts was "not seriously challenging the amount requested." In this Court, however, Tandycrafts mounts an attack on the amount of the allowance arguing that "the clarifying disclosures, while perhaps helpful, were not worth $180,000." Initio requested counsel fees of $180,000 plus $3,026.66 in expenses, an amount calculat-

ed by using accumulated hourly rates of Initio's counsel as the "lodestar" and applying a multiplier of 1.9 times.[1] As noted, the Vice Chancellor was apparently under the impression that the basis for the fee was not at issue, merely the entitlement to any award. In the absence of any finding validating the "lodestar" and multiplier components of the fee application we are unable to review the appropriateness of those elements. To the extent that on appeal Tandycrafts is seeking a proportionate reduction of the fee allowance based on an "other causes" contention, and given the limited scope of our review, we perceive of no basis in this record to disturb the conclusion of the Vice Chancellor awarding the full amount sought by Initio.

\* \* \*

The decision of the Court of Chancery is affirmed.

---

1. A fee allowance based upon a time factor lodestar formulated in *Lindy Bros. Builders, Inc. of Phila. v. American Radiator and Standard Corp.*, 3d Cir., 487 F.2d 161 (1973), has not supplanted the multiple factors criteria includ-

ing the nature of the benefit, the complexity of the litigation and the time, effort and skill of counsel. *Sugarland Industries, Inc. v. Thomas*, Del.Supr., 420 A.2d 142, 150 (1980).