COURT OF CHANCERY
OF THE
STATE OF DELAWARE

KATHALEEN ST. JUDE MCCORMICK
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

November 3, 2022

Kevin H. Davenport
Eric J. Juray
John G. Day
Prickett, Jones & Elliott, P.A.
1310 King Street
Wilmington, DE 19801

Aaron E. Moore
Kevin J. Connors
Marshall Dennehy Warner Coleman &
Goggin, P.C.
1007 N. Orange Street, Suite 600
P.O. Box 8888
Wilmington, DE 19801

Re: *DeAnn Totta et al. v. CCSB Financial Corp.*,
C.A. No. 2021-0173-KSJM

Dear Counsel:

On May 31, 2022, I issued a post-trial memorandum opinion ruling in favor of

Plaintiffs (the "Post-Trial Opinion").[1] On August 29, 2022, Plaintiffs moved for their

attorneys' fees and expenses in connection with this litigation.[2] This letter constitutes my

decision on that motion.

I assume the parties are familiar with the background of this case; the Post-Trial

Opinion contained detailed findings of fact. In short, Plaintiffs sued to challenge Defendant

CCSB Financial Corp.'s ("CCSB" or the "Company") 2021 board election. Specifically,

Plaintiffs disputed the incumbent CCSB board's interpretation of a provision in CCSB's

---

[1] *Totta v. CCSB Fin. Corp.*, 2022 WL 1751741 (Del. Ch. May 31, 2022). Terms not defined
herein shall have the same meaning set forth in the Post-Trial Opinion.

[2] C.A. No. 2021-0173-KSJM, Docket ("Dkt.") 100; *see also* Dkt. 107 (Opposition), Dkt.
109 ("Reply").

certificate of incorporation that limited stockholders' ability to "act in concert" with one another to exercise more than 10% of the Company's voting power in an election (the "Voting Limitation"). The incumbent board's interpretation invalidated Plaintiffs' votes for the insurgent nominees, causing the incumbent board members to win the election. In the Post-Trial Opinion, I found that the incumbent board's interpretation was erroneous. As a result, Plaintiffs' votes were counted, and the insurgent nominees won the 2021 election.[3]

Plaintiffs' motion requires me to assess whether this litigation conferred a corporate benefit on CCSB. In general, Delaware follows the "American Rule" and requires each party to pay its own attorneys' fees and expenses, regardless of the outcome.[4] Over time, however, equitable exceptions to the American Rule have been recognized, including when a stockholder party obtains a "corporate benefit."[5] Specifically, attorneys' fees and expenses "may be awarded to an individual shareholder whose litigation effort confers a benefit on the corporation, or its shareholders, notwithstanding the absence of a class or

---

[3] Dkt. 92.

[4] *See Montgomery Cellular Hldg. Co., Inc. v. Dobler*, 880 A.2d 206, 227 (Del. 2005) ("Delaware follows the 'American Rule,' whereby a prevailing party is generally expected to pay its own attorney's fees and costs.").

[5] *See EMAK Worldwide, Inc. v. Kurz*, 50 A.3d 429, 433 (Del. 2012) ("We have affirmed awards for many kinds of non-monetary benefits, including causing a defendant to abandon a going-private transaction; making corrective disclosures in proxy materials; returning voting rights to common shareholders; and cancelling a preferred stock issue to a controlling shareholder that, allegedly, was not entirely fair.").

derivative component."[6]   Under the corporate benefit doctrine, a plaintiff is eligible to recover attorneys' fees where "(1) the suit was meritorious when filed; (2) the action producing benefit to the corporation was taken by the defendants before a judicial resolution was achieved; and (3) the resulting corporate benefit was causally related to the lawsuit."[7]   The doctrine often justifies fee-shifting "when an action brought pursuant to 8 *Del. C.* § 225 achieves a benefit for the corporation."[8]

Plaintiffs argue that this litigation has conferred substantial benefits on CCSB's stockholders in three respects.   First, they obtained an order declaring that the insurgent candidates won the 2021 election and must be seated, thereby vindicating "sacrosanct" stockholder voting rights.[9]   Second, the Post-Trial Opinion established a uniform interpretation and application of the Voting Limitation moving forward, preventing future manipulation of its terms and weaponization against stockholders.   Third, the Post-Trial Opinion declared that the incumbent board's sole justification to exclude dissident votes in elections was invalid and void as a matter of law under *Blasius*.

CCSB counters that Plaintiffs obtained a purely personal benefit.  Because the other non-party stockholders had their votes counted *pro rata* at the 2021 election, CCSB argues, the litigation and resulting Post-Trial Opinion only benefitted Plaintiffs by rectifying the

---

[6] *Tandycrafts, Inc. v. Initio P'rs*, 562 A.2d 1162, 1163 (Del. 1989).

[7] *Hollywood Firefighters' Pension Fund v. Malone*, 2021 WL 5179219, at *6 (Del. Ch. Nov. 8, 2021).

[8] *Keyser v. Curtis*, 2012 WL 3115453, at *19 (Del. Ch. July 31, 2012).

[9] *EMAK*, 50 A.3d at 433.

loss of Plaintiffs' own voting power. CCSB also contends that Plaintiffs obtained a primarily personal benefit from advancing their affiliate David Johnson's quest to "take control" of CCSB.[10]

Delaware courts have rejected the notion that obtaining any personal benefit disqualifies a plaintiff from fee shifting.[11] Every litigant has some self-interested motivation; the relevant inquiry is whether the benefit is so purely personal as to render an award of attorneys' fees inequitable.[12]

*Keyser v. Curtis*, CCSB's primary support, provides a useful guidepost. In *Keyser*, the plaintiffs brought a § 225 action to challenge the results of a board election.[13] The outcome depended on whether the plaintiffs' written consent to replace the incumbent directors with themselves had been nullified by a Series B preferred share issuance. Although Vice Chancellor Noble found that the written consents were valid and that the plaintiffs now constituted the corporation's board, he denied their motion for attorneys' fees. The corporation did receive some benefit by establishing the ownership of its shares and the invalidity of the Series B issuance. Still, the plaintiffs were the primary

---

[10] Opposition ¶ 4.

[11] *See Martin v. Harbor Diversified, Inc.*, 2020 WL 568971, at *4 (Del. Ch. Feb. 5, 2020) ("The fact that the Plaintiff had a personal motive in bringing the litigation is not fatal to a request for fees under the corporate benefit doctrine.").

[12] *See id.* ("[I]t would be inequitable to grant fees to the Plaintiff where it is clear that the corporate benefit was a mere externality to the Plaintiff's ultimate goal of achieving a buyout of his interest.").

[13] 2012 WL 3115453 (Del. Ch. July 31, 2012).

beneficiaries: they thereafter controlled the Board and likely constituted a new control group of their own. This substitution of one control group for another was "hardly a thrilling victory from the point of view of the [] stockholders who are not [the plaintiffs'] allies."[14]

I do not view the benefit conferred in this case so narrowly. While in a strict sense the Post-Trial Opinion only affected Plaintiffs' votes, the judgment fortifies the Company's stockholder franchise generally. By bringing this litigation, Plaintiffs vindicated not only their own votes, but also the majority vote of the unaffiliated stockholders who properly elected the insurgent nominees. The result obtained by this litigation prevents future stockholders from being similarly harmed by an erroneous application of the Voting Limitation. Plaintiffs' success in this case confers a substantial benefit on CCSB by retroactively correcting the incumbent board's interpretation of the Voting Limitation and, in effect, proactively setting the interpretation for future elections.[15] The corporation is better off for a rectified election process. On balance, Plaintiffs' claims conferred a greater common relief than that achieved in *Keyser*.

CCSB also argues that its good-faith interpretation of the Voting Limitation weighs against fee-shifting. Although bad faith can result in fee shifting,[16] good faith does not

---

[14] *Id.* at *19.

[15] *See EMAK*, 50 A.3d at 433 ("Shareholder voting rights are sacrosanct. The fundamental governance right possessed by shareholders is the ability to vote for the directors the shareholder wants to oversee the firm.").

[16] *Martin*, 2020 WL 568971, at *4.

immunize one from fee shifting. To be sure, equitable considerations generally play a role in considering a plaintiff's personal benefit from litigation,[17] but these concerns do not make a fee award inequitable in this case.

The next step is to analyze the reasonableness of the proposed award. In such a *Sugarland* analysis, the court considers the following factors: "1) the results achieved; 2) the time and effort of counsel; 3) the relative complexities of the litigation; 4) any contingency factor; and 5) the standing and ability of counsel involved."[18] The most important of these factors is the first, i.e., the benefit to the corporation achieved by the stockholder's action.[19]

Plaintiffs argue that the substantial benefits conferred on CCSB justify their requested $385,415.09 in fees and expenses. As discussed above, I agree. The other *Sugarland* factors also support this award: the case involved the interpretation of an unusual voting provision; the litigation required contested motions for expedition and

---

[17] *See id.* at *2 ("Stockholders should not, however, be compelled to share the costs of the litigious effort of a fellow stockholder, where that stockholder has pursued an action in her own interest, . . . such forced contribution is clearly inequitable."); *Keyser*, 2012 WL 3115453, at *19 ("The Court finds that, in bringing this action, [plaintiff] was principally motivated by a desire to benefit himself, not a desire to benefit [the corporation]. There is nothing wrong with that, but it does not present the type of situation that calls out for an award of attorneys' fees.").

[18] *Ams. Mining Corp. v. Theriault*, 51 A.3d 1213, 1254 (Del. 2012) (citing *Sugarland Indus., Inc. v. Thomas*, 420 A.2d 142, 149 (Del. 1980)).

[19] *Id.* at 1256.

dismissal; and Plaintiff was represented by respected counsel. Thus, the *Sugarland* analysis supports Plaintiffs' requested fee award.

CCSB contends that Plaintiffs have submitted insufficiently detailed proof of the fees they seek, noting that "Delaware courts apply 'rigorous scrutiny' to fee requests to ensure that they are reasonable."[20]

But "[d]etermining reasonableness does not require that this Court examine individually each time entry and disbursement."[21] And Plaintiffs submitted three affidavits in support of their motion. First, John G. Day's affidavit avers to the fees and expenses incurred by Prickett Jones in this action, to the tune of $315,649.64.[22] This represents the bulk of the requested fee award. Day lists the dates, invoice numbers, and fee and expense amounts for each Prickett Jones invoice Plaintiffs have paid, and subtracted fees billed in the invoices that did not directly relate to this litigation. Given that this case proceeded in expedited fashion with attendant document discovery, depositions, motion practice, trial briefing, trial, and post-trial submissions, I am satisfied that this portion of the fees is reasonable.

Plaintiffs also request smaller reimbursements of $35,214.55 and $27,467.50 for legal services rendered by Franke Schultz & Mullen, P.C. and O'Hagen Meyer, PLLC,

---

[20] *In re Cox Radio, Inc. S'holders Litig.*, 2010 WL 1806616, at *20 (Del. Ch. May 6, 2010) (quoting *In re Coleman S'holders Litig.*, 750 A.2d 1202, 1212 (Del. Ch. 1999)).

[21] *Aveta Inc. v. Bengoa*, 2010 WL 3221823, at *6 (Del. Ch. Aug. 13, 2010).

[22] Dkt. 100, Aff. of John G. Day ¶ 6.

respectively. Having reviewed the accompanying affidavits detailing those invoice dates, numbers, and fee and expense amounts, I am satisfied that these are also reasonable. The remaining costs are $6,253.40 for deposition transcripts and $830.00 paid to CCSB for Park's books and records inspection. These costs appear reasonable and customary as well.

The total amount of attorneys' fees and expenses, $385,415.09, appears comparable to awards in other cases. In *Full Value Partners, L.P. v. Swiss Helvetia Fund, Inc.*, then-Chancellor Bouchard awarded attorneys' fees of $300,000 for the plaintiff's efforts in challenging a corporation's interpretation of its bylaw and invalidation of plaintiff's votes.[23] The litigation resulted in the corporation counting the plaintiff's votes and repealing the offending bylaw. The Chancellor noted that the litigation provided a corporate benefit both in vindicating the franchise rights of the corporation's stockholders and preventing the board from weaponizing the bylaw against future nominees. Counsel's efforts in that case were modest: they prepared a viable complaint and argued a motion to expedite but did not take any depositions or engage in document discovery. For these efforts, an award of $300,000 was warranted. Here, where counsel engaged in expedited proceedings and litigated the case through trial, an award of $385,415.09 seems altogether reasonable.

Finally, through the motion and in the proposed form of order, Plaintiffs request that CCSB be ordered to reimburse their fees and expenses incurred in connection with the

---

[23] 2018 WL 2748261, at *7–8 (Del. Ch. June 7, 2018).

appeal once concluded, subject to a Court of Chancery Rule 88 affidavit.  CCSB did not

address this requested relief in briefing, which is just and appropriate.

Plaintiffs' motion is granted.  The court will enter Plaintiffs' proposed form of order

contemporaneously with issuing this letter.

Sincerely,

*/s/ Kathaleen St. Jude McCormick*

Kathaleen St. Jude McCormick
Chancellor

cc:     All counsel of record (by *File & ServeXpress*)