# COURT OF CHANCERY
## OF THE
## STATE OF DELAWARE

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: May 20, 2024
Date Decided: August 30, 2024

Ned Weinberger, Esq.
Michael C. Wagner, Esq.
LABATON KELLER SUCHAROW LLP
222 Delaware Avenue, Suite 1510
Wilmington, Delaware 19801

Thomas Curry, Esq.
SAXENA WHITE P.A.
824 North Market Street, Suite 1003
Wilmington, Delaware 19801

Joseph L. Christensen, Esq.
Meghan D. Dougherty, Esq.
CHRISTENSEN & DOUGHERTY LLP
1201 North Market Street, Suite 1404
Wilmington, Delaware 19801

A. Thompson Bayliss, Esq.
Christopher F. Cannataro, Esq.
Florentina D. Field, Esq.
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, Delaware 19807

Edward B. Micheletti, Esq.
Arthur R. Bookout, Esq.
Matthew P. Majarian, Esq.
Peyton V. Carper, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
One Rodney Square
920 North King Street
Wilmington, Delaware 19899

Brock E. Czeschin, Esq.
Matthew D. Perri, Esq.
Kevin M. Kidwell, Esq.
Mari Boyle, Esq.
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801

David E. Ross, Esq.
Roger S. Stronach, Esq.
ROSS ARONSTAM & MORITZ LLP
1313 North Market Street, Suite 1001
Wilmington, Delaware 19801

Re:    *In re Sculptor Capital Management, Inc. Stockholder Litigation*,
       C.A. No. 2023-0921-SG

Dear Counsel:

Before me currently is Plaintiff Gilles Beauchemin's application for attorneys' fees in connection with a cash settlement and other benefits reached in this action. That settlement resolved derivative claims relating to a merger (the "Merger") between Rithm Capital Corp. ("Rithm") and Sculptor Capital Management, Inc. ("Sculptor"). The underlying putative class action alleged, *inter alia*, that Sculptor's board of directors (the "Board") and a special committee thereof (the "Special Committee") breached their fiduciary duties in connection with a merger agreement with Rithm, because the Board locked up a sale of Sculptor to a favored bidder despite a consortium of bidders ("Saba") placing a higher bid.[1]

Plaintiff initiated this action on September 11, 2023, by filing a verified class action complaint along with a motion to expedite and a motion for a preliminary injunction.[2] I denied Plaintiff's motion to expedite at that time given the ongoing nature of the negotiations between the Special Committee and bidders.[3] Plaintiff amended his complaint and renewed his motion to expedite on October 16, 2023.[4] The next day, Daniel S. Och, Harold A. Kelly, Jr., Richard Lyon, James O'Connor,

---

[1] *See* Am. Class Action Compl. for Inj. Relief ¶¶ 1–3, Dkt. No. 87.
[2] *See* Verified Class Action Compl. for Inj. Relief, Dkt. No. 1; Pl.'s Mot. to Expedite, Dkt. No. 1; Pl.'s Mot. for Prelim. Inj., Dkt. No. 1.
[3] 09-26-23 Tr. of Tel. Oral Arg. and Rulings of the Ct. on Pl.'s Mot. to Expedite 44–45, Dkt. No. 26.
[4] *See* Verified Am. and Suppl. Class Action Compl. for Inj. Relief, Dkt. No. 28; Pl.'s Renewed Mot. to Expedite, Dkt. No. 29.

and Zoltan Varga (the "Founders") filed a separate class action that sought to enjoin the Merger.[5] The matter was expedited on October 17, 2023, and a preliminary injunction hearing was set for November 9, 2023.[6] However, on October 27, 2023, the Founders settled their individual claims against Defendants.[7] In response, on October 29, 2023, Plaintiff filed a second amended complaint to add the Founders as defendants in this action.[8] The hearing on the preliminary injunction was rescheduled for November 14, 2023.[9] That preliminary injunction hearing did not occur because the parties reached an agreement-in-principle inside the Kent County Courthouse just before the hearing was to take place.[10]

On May 20, 2024, I approved the settlement for the class and the incentive award for Plaintiff.[11] The common fund created by the settlement is $6.5 million (the "Settlement Fund").[12] Plaintiff, for his part, requests that his attorneys be

---

[5] *See Och v. Engel*, C.A. No. 2023-1043-SG (Del. Ch. Oct. 17, 2023).
[6] *See* Granted ([Proposed] Ord. to Pl.'s Renewed Mot. to Expedite), Dkt. No. 30. Plaintiff and Founder's respective class actions were consolidated on October 23, 2023. *See* Granted (Stipulation and [Proposed] Ord. Consol. Related Actions), Dkt. No. 43.
[7] *See* Letter to The Honorable Sam Glasscock from Edward B. Micheletti, Esq., advising of revised merger terms and enclosing Defs. and Founder Gp.'s Stipulation and [Proposed] Ord. Regarding Dismissal of the Founder Gp., Dkt. No. 78.
[8] *See* Am. Class Action Compl. for Inj. Relief, Dkt. No. 87.
[9] *See* Prelim. Inj. Hr'g before Vice Chancellor Sam Glasscock dated 11.14.23, Dkt. No. 130.
[10] *See* Pl.'s Br. Supp. Settlement Approval, Class Certification, an Award of Att'ys' Fees and Expenses, and an Incentive Award 21, Dkt. No. 149 ("Pl.'s OB").
[11] Tr. of 5-20-2024 Settlement Hr'g and Partial Rulings of the Ct. 52:21–24, Dkt. No. 166 ("Settlement Hr'g").
[12] Pl.'s OB 21.

awarded $5.75 million in fees and $109,678.73 in expenses (the "Fee and Expense Award").[13]

At the time Plaintiff initiated this action, Rithm's bid to purchase Sculptor was for $11.15-per-share.[14] On October 12, 2023, Rithm submitted, and the Special Committee preliminarily accepted, a $12.00-per-share offer (the "First Transaction Price Increase").[15] Thereafter, on October 26, 2023, the Founders settled their individual claims in this action and Rithm increased its bid to $12.70-per-share (the "Second Transaction Price Increase" and collectively with the First Transaction Price Increase, the "Transaction Price Increases").[16] Sculptor issued two supplemental proxy statements on November 6 (the "November 6 Disclosures") and November 9 (the "November 9 Disclosures" and collectively with the November 6 Disclosures, the "Supplemental Disclosures") to inform stockholders, *inter alia*, of Saba's attempts to have Sculptor deem its bid superior to Rithm's and developments related to the Founders' settlement of their individual claims.[17]

---

[13] *Id.* at 2.

[14] Pl.'s Opening Br. Supp. Mot. for Prelim. Inj. ("Pl.'s PI OB"), Ex. 30 at 3937, Dkt. No. 115.

[15] Pl.'s PI OB, Ex. 2 at 90–92, Dkt. No. 113; Pl.'s PI OB, Ex. 80 at 3763, Dkt. No. 115; Pl.'s PI OB, Ex. 81 at 5099, Dkt. No. 115; Pl.'s PI OB, Ex. 82 at 5101.001, Dkt. No. 115.

[16] Pl.'s PI OB, Ex. 12 at Item 1.01, 7.01, Dkt. No. 113; Pl.'s PI OB, Ex. 114 at 6–8, Dkt. No. 116.

[17] Special Comm. Defs.' Answering Br. Opp'n Pl.'s Mot. for Prelim. Inj. ("Committee's Br."), Ex. 87, Dkt. No. 122; Aff. of Ned Weinberger, Esq. Supp. Proposed Settlement and Award of Att'ys' Fees and Expenses, Ex. 1, Dkt. No. 149.

Plaintiff's counsel contend they should be granted their Fee and Expense Award because they (i) obtained the Settlement Fund; (ii) contributed to the Transaction Price Increases; and (iii) caused the Supplemental Disclosures.[18] Rithm, however, opposes the Fee and Expense Award to the extent Plaintiff seeks fees as a result of the Transaction Price Increases and Supplemental Disclosures.[19]

*A. Analysis*

"The determination of any attorney fee award is a matter within the sound judicial discretion of the Court of Chancery."[20] When exercising its judicial discretion in this context, the Court uses the *Sugarland* factors: (i) the results achieved; (ii) the contingent nature of counsel's fee; (iii) the litigation's relative complexities; (iv) counsel's efforts, including time and expenses; and (v) counsel's standing and ability.[21] "When the benefit is quantifiable, as in this case, by the creation of a common fund, *Sugarland* calls for an award of attorneys' fees based upon a percentage of the benefit."[22] Under the corporate benefit doctrine, fees may be awarded if: "(a) the claim was meritorious when filed; (b) the action was benefitting the corporation; or a class was created prior to judicial resolution of the

[18] Pl.'s OB 46.

[19] *See* Def. Rithm Cap. Corp.'s Ltd. Opp'n to Pl.'s Br. Supp. Settlement Approval, Class Certification, an Award of Att'ys' Fees and Expenses, and an Incentive Award 18, Dkt. No. 155 ("Rithm's Opp'n").

[20] *Ams. Mining Corp. v. Theriault*, 51 A.3d 1213, 1255 (Del. 2012).

[21] *See Sugarland Indus., Inc. v. Thomas*, 420 A.2d 142 (Del. 1980).

[22] *Ams. Mining Corp.*, 51 A.3d at 1259.

suit; and (c) the benefit was causally related to the lawsuit."[23] "The size of the benefit conferred and the portion of the benefit attributable to plaintiff are often considered the two most important elements" in determining attorneys' fees.[24]

I address the four[25] bases for the requested fees and expenses, below.

1. The Settlement Fund

Plaintiff requests 25% of the fund created by the settlement.[26] This amounts to $1,597,580.[27] The Defendants do not oppose this fee award component.[28] I note that this was a litigation conducted by Plaintiff's counsel on a purely contingent basis,[29] that litigation was vigorous and discovery extensive, and that the matter proceeded to the point of a full preliminary injunction hearing.[30] I find, in light of the *Sugarland* factors, that this fee request is reasonable.

2. The Transaction Price Increases

Plaintiff seeks a fee award for causing the Transaction Price Increases equal to the dollar value of the Transaction Price Increases multiplied by counsel's role (as a percentage) in causing the Transaction Price Increases, multiplied by a "stage-of-

---

[23] *Tandycrafts, Inc. v. Initio P'rs*, 562 A.2d 1162, 1167 (Del. 1989).
[24] *In re Quest Software, Inc. S'holders Litig.*, 2013 WL 5978900, at *6 (Del. Ch. Nov. 12, 2013).
[25] That is, fees under the three benefits allegedly conferred, as set out above, together with reimbursement of the expenses incurred by Plaintiff's counsel.
[26] Pl.'s OB 47.
[27] That is 25% of the settlement, net of expenses. *Id.*
[28] Rithm's Opp'n 18.
[29] Pl.'s OB 63.
[30] *See* Prelim. Inj. Hr'g before Vice Chancellor Sam Glasscock dated 11.14.23, Dkt. No. 130.

litigation" percentage.[31] That is, Plaintiff seeks a fee based on the increased price that his litigation efforts caused, determined by application of the *Sugarland* factors, expressed as a percentage of the fund. I endorse this approach here. Based on this equation, Plaintiff seeks a fee award of no less than $4 million.[32] Rithm contends that Plaintiff's calculation of the Fee and Expense Award should exclude the Sculptor shares held by the Defendants.[33] Rithm further opines that Plaintiff overstates its role in the price increases.[34]

I start my analysis by determining the scope of the class for which Plaintiff may be awarded fees, which will determine the starting point for arriving at the price increase for which this litigation may be credited. Rithm contends that Defendants' shares should be excluded from the Fee and Expense Award because the settlement, by its terms, excludes Defendants from the defined class that Plaintiff's counsel represents.[35] Under the unique circumstances here (which include a large block of stock held by the Founders, who were initially plaintiffs and latterly defendants), I disagree. Delaware courts recognize that "[a]n attorney can recover an award of fees and expenses when the attorney creates a common fund for, or confers a common

---

[31] Pl.'s OB 49.
[32] *See id.* at 48, 55–57.
[33] Rithm's Opp'n 21–24.
[34] *Id.* at 25–34.
[35] *Id.* at 21–24.

7

benefit upon, *a readily ascertainable group*."[36]  While Defendants are excluded from receiving disbursements from the *Settlement Fund*, Defendants did share in and benefit from the Transaction Price Increases, which resulted, per Plaintiff, from Plaintiff's actions in bringing this suit.[37]  In this case, it is equitable to include Defendants' shares in the calculation to determine Plaintiff's Fee and Expense Award related to the Transaction Price Increases.[38]

I first address the extent to which the litigation drove the price increases.  The total benefit to the stockholders of the increases is simply the increased price per share, $1.55,[39] multiplied by the outstanding shares: $80,800,000.[40]  The question is, what portion of this may reasonably be ascribed to Plaintiff's litigation efforts? Considering the timing of the efforts of Plaintiff, relative to each individual price increase, the market forces at play, and the other parties involved, I conclude that

---

[36] *Smith v. Fid. Mgmt. & Rsch. Co.*, 2014 WL 1599935, at *8 (Del. Ch. Apr. 16, 2014) (emphasis added).

[37] Defendants acknowledge that Plaintiff's actions contributed to the Transaction Price Increases. *See* Stipulation and Agreement of Settlement, Compromise, and Release ¶ 16, Dkt. No. 143.

[38] *See Smith*, 2014 WL 1599935, at *9 (quoting *Tandycrafts*, 562 A.2d at 1166) ("The power to award fees for a common fund or benefit 'is a flexible one based on the historic power of the Court of Chancery to do equity in particular situations.'").

[39] Pl.'s OB 29.

[40] The original total transaction value of the merger was $639 million. Pl.'s PI OB, Ex. 30 at 3937, Dkt. No. 115.  After Rithm increased the transaction price from $11.15 per share to $12.00, the new total transaction value of the merger was $676 million, which is a $37 million increase in transaction value from $639 million. Pl.'s PI OB, Ex. 2 at 11, 131, Dkt. No. 113. After Rithm increased the transaction price a second time from $12.00 per share to $12.70, the new total transaction value of the merger was $719.8 million, which is a $43.8 million increase in transaction value from $676 million.  Pl.'s PI OB, Ex. 12 at Ex. 99.1, Dkt. No. 113.  The $37 million increase and $43.8 million increase added together equal to $80.8 million total increase in transaction value from the Transaction Price Increases.

Plaintiff's litigation contributed 12% to attaining the Transaction Price Increases. This represents the "benefit achieved by the litigation, not simply a benefit that, *post hoc ergo pro[p]ter hoc*, is conferred after the litigation commences."[41]

While Plaintiff contends that this litigation should be credited as contributing at least 50% with respect to the Transaction Price Increases,[42] I disagree. The First Transaction Price Increase occurred on October 12, 2023,[43] about a month after this litigation was filed[44] but five days before this matter was expedited.[45] This litigation placed the Board and Special Committee on notice that Plaintiff's counsel was monitoring the process employed by the Special Committee to ensure that the Special Committee was complying with its fiduciary duties, including whether it should deem a bid by Saba superior. However, given that the First Transaction Price Increase occurred prior to expedition being granted and before documents had been produced, this litigation, in my mind, is reasonably seen as contributing to (but not, substantially, the cause of) the First Transaction Price Increase.

---

[41] *In re Quest Software*, 2013 WL 5978900, at *8 n.91.
[42] Pl.'s OB 55.
[43] Pl.'s PI OB, Ex. 2 at 90–92, Dkt. No. 113; Pl.'s PI OB, Ex. 80 at 3763, Dkt. No. 115; Pl.'s PI OB, Ex. 81 at 5099, Dkt. No. 115; Pl.'s PI OB, Ex. 82 at 5101.001, Dkt. No. 115.
[44] *See* Verified Class Action Compl. for Inj. Relief, Dkt. No. 1.
[45] *See* Granted ([Proposed] Ord. to Pl.'s Renewed Mot. to Expedite), Dkt. No. 30.

The Second Transaction Price Increase, in comparison, happened on October 26, 2023,[46] nine days after this matter was expedited.[47] This was after Plaintiff received some of its requested discovery and accordingly amended his complaint, and less than two weeks before the then-scheduled November 9, 2023 preliminary injunction hearing.[48] However, as Plaintiff acknowledges, the Second Transaction Price Increase was negotiated by the Founders with Rithm in exchange for *the Founders* settling their individual claims and supporting the Merger.[49] That is not to say this litigation and Plaintiff's efforts in prosecuting it did not contribute at all to the Second Transaction Price Increase. Rather, the record and Plaintiff's professed lack of knowledge of these negotiations[50] demonstrate that Plaintiff's litigation was not the primary cause of the Second Transaction Price Increase. Defendants were aware of this litigation and actively participating; documents had been produced and depositions were scheduled to begin a day after the Second Transaction Price Increase.[51] This, to my mind, is sufficient to attribute a portion of the causation to Plaintiff's actions in this litigation.

---

[46] Pl.'s PI OB, Ex. 12 at Item 1.01, 7.01, Dkt. No. 113; Pl.'s PI OB, Ex. 114 at 6–8, Dkt. No. 116.

[47] Granted ([Proposed] Ord. to Pl.'s Renewed Mot. to Expedite), Dkt. No. 30.

[48] Pl.'s OB 53.

[49] *Id.* at 54.

[50] *Id.*

[51] *Id.* at 53–54.

Taken together, I find that 12%, or $9,696,000 of the price increases, was a benefit created by Plaintiff's litigation.

Next, I consider the appropriate percentage to be applied to the benefit created by Plaintiff's litigation to determine the appropriate Fee and Expense Award. Plaintiff's counsel requests the Court apply a 25% stage-of-litigation percentage due to the stage when the settlement was reached.[52]

Above, I applied a 25% award of the settlement amount as reasonable under the factors laid out by the Supreme Court in *Sugarland*. This percentage was not opposed by the Defendant.[53] The price increases, however, occurred at an earlier stage of litigation than the settlement, and accordingly, a lower—20%—award is appropriate.

Together with the analysis above, the remaining *Sugarland* factors support my conclusion that a reasonable amount to award Plaintiff's attorneys for the Transaction Price Increases may be arrived at by awarding Plaintiff 20% of the benefit created by the litigation: $1,939,200.

### 3. The Supplemental Disclosures

"Whenever a plaintiff generates enhanced disclosure in connection with stockholder action, [a] benefit is conferred."[54] "To quantify an appropriate fee

---

[52] *Id.* at 55.
[53] Rithm's Opp'n 18. Defendant does advocate for a substantially lower percentage fee recovery for the price increases. *Id.* at 25, 34.
[54] *In re Sauer-Danfoss Inc. S'holders Litig.*, 65 A.3d 1116, 1136 (Del. Ch. 2011).

award, this Court evaluates the qualitative importance of the disclosures obtained."[55] In determining the reasonableness of the attorneys' fees requested in connection with disclosures, this Court considers whether the information disclosed is material to the stockholders being asked to act in reliance thereon.[56]

Plaintiff seeks $1.25 million for the Supplemental Disclosures, while Defendants contend Plaintiff is entitled to no more than $100,000.[57] The November 6 Disclosures informed stockholders, *inter alia*, that Saba had requested that the Special Committee publicly disclose Saba's proposal and the identities of the consortium members, and that Saba expressed its commitment to minimal disruption at Sculptor, specifically expressing that Saba did not intend to change Sculptor's investment strategy.[58] This information, however, had partially been disclosed to Sculptor stockholders in the earlier October 12, 2023 proxy statement.[59] The newly disclosed information in the November 6 Disclosures consisted of additional information from the Special Committee's financial advisors, that included a summary of the results of a Selected Precedent Transaction Analysis and company-

---

[55] *Id.*

[56] *See Anderson v. Magellan Health, Inc.*, 298 A.3d 734, 749 (Del. Ch. 2023) (explaining that the Court "will award mootness fees based on supplemental disclosures only when the information is material"); *see also Assad v. Botha*, 2023 WL 7121419, at *1 (Del. Ch. Oct. 30, 2023) (awarding $100,000 for "material—and unremarkable—disclosures").

[57] Pl.'s OB 62; Rithm's Opp'n 39.

[58] *See* Pl.'s OB 19 (citing Committee's Br., Ex. 87, Dkt. No. 122).

[59] *See* Pl.'s PI OB, Ex. 2 at 44, 64–65, 69, 80, Dkt. No. 113.

by-company metrics for the Trading Multiples Analysis.[60] These disclosures provided some limited material information.[61]

The November 9 Disclosures informed Sculptor stockholders that Plaintiff had filed his opening brief in support of the preliminary injunction and further included a list of items that Plaintiff alleged were omitted from the proxy statement.[62] Because the company did not concede the veracity of the allegations made by a plaintiff, such disclosure is of limited material value to stockholders.[63]

Overall, I find that the Supplemental Disclosures did not substantially alter the total mix of information available to stockholders, when deciding how to vote on the proposed Merger, in a way that justifies the large award sought. That is not to say that the additional information attributable to Plaintiff was not material to the stockholders. The Defendants themselves posit that the disclosures provided Sculptor stockholders with (minimal) additional information; they suggest $100,000 as a fee for these disclosures.[64] In light of the nature of the disclosures, as well as the substantial award for generating a common monetary benefit, detailed above, I

---

[60] *See* Pl.'s OB 19 (citing Committee's Br., Ex. 87, Dkt. No. 122).
[61] *See In re Trulia, Inc. S'holders Litig.*, 129 A.3d 884, 904 (Del. Ch. 2016) (explaining that, under Delaware law, "[a] fair summary does not require disclosure of sufficient data to allow stockholders to perform their own valuation").
[62] Pl.'s OB 19–21; Pl.'s OB, Ex. 1 at 3–4, Dkt. No. 149.
[63] *See, e.g.*, *In re Mindbody, Inc. S'holders Litig.*, 2020 WL 5870084, at *30 (Del. Ch. Oct. 2, 2020).
[64] Rithm's Opp'n 39–45.

agree.  Accordingly, I conclude that the Supplemental Disclosures support an award of $100,000.

### 4. All-in Award

Summing the three sources of the fee award leaves a total award of $3,636,780.  Again, this is based on a purely contingent effort by Plaintiff's counsel.[65]  By way of comparison, the amount of a fee implied by employing an hourly rate—the lodestar—is $2,889,895.[66]

### 5. Expenses

I find the expense reimbursement request, $109,678.73, reasonable.[67]

### B. Conclusion

Plaintiff has created three common benefits through this litigation.  For the reasons above, he is entitled to $1,597,580 for creation of the Settlement Fund; $1,939,200 for creating the Transaction Price Increases; and $100,000 for the Supplemental Disclosures.  Plaintiff's counsel is further entitled to reimburse its expenses of $109,678.73.  By my calculation, this results in an all-in award of

---

[65] Pl.'s OB 63.

[66] *Id.* at 64 (citing Aff. of Ned Weinberger ¶¶ 3–4, 6, Dkt. No. 149; Aff. of Joseph Christensen ¶¶ 3–4, 6, Dkt. No. 149; Aff. of Thomas Curry ¶¶ 3–4, 6, Dkt. No. 149; Aff. of Jeremy Friedman ¶¶ 3–4, 6, Dkt. No. 149; Aff. of D. Seamus Kaskela ¶¶ 3, 5–6, Dkt. No. 149).

[67] *Id.* at 46.

$3,746,459.[68]  The parties should submit a form of order in accordance with this Letter Opinion.

Sincerely,

*/s/ Sam Glasscock III*
Vice Chancellor

---

[68] I have based the calculations in this Letter Opinion on the numbers provided in briefing, as I understand them.  If the parties conclude that I have misapprehended these values, they should so inform me.