**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

IN RE ORACLE CORPORATION DERIVATIVE LITIGATION

Consolidated
C.A. No. 2017-0337-SG

# MEMORANDUM OPINION

Date Submitted: November 17, 2023
Date Decided: February 7, 2024

Joel Friedlander, Jeffrey M. Gorris, and David Hahn, FRIEDLANDER & GORRIS, P.A., Wilmington, Delaware; Christopher H. Lyons and Tayler D. Bolton, ROBBINS GELLER RUDMAN & DOWD LLP, Wilmington, Delaware; OF COUNSEL: Randall J. Baron and David A. Knotts, ROBBINS GELLER RUDMAN & DOWD LLP, San Diego, California; Gregory Del Gaizo, ROBBINS LLP, San Diego, California, *Attorneys for Lead Plaintiffs Firemen's Retirement System of St. Louis and Robert Jessup*.

Blake Rohrbacher, Susan M. Hannigan, Matthew D. Perri, Daniel E. Kaprow, and Kyle H. Lachmund, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware, *Attorneys for Nominal Defendant Oracle Corporation*.

Elena C. Norman, Richard J. Thomas, and Alberto E. Chávez, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware; OF COUNSEL: Peter A. Wald, LATHAM & WATKINS LLP, San Francisco, California; Blair Connelly, LATHAM & WATKINS LLP, New York, New York, *Attorneys for Defendants Lawrence J. Ellison and Safra A. Catz*.

**GLASSCOCK, Vice Chancellor**

I once described the situation of the entrepreneurial plaintiff's firm in derivative litigation thus:

> The position of the Plaintiffs' counsel is reminiscent of a rodeo bull-rider. The cowboy gets his bull by the luck of the draw. A "good" bull is aggressive and vigorous; a "bad" bull is the opposite. A successful ride of a good bull results in a high score. It takes a good rider to ride a good bull, but not even a great rider can wring a high score from a bad bull. Not even great counsel can wring significant stockholder value from litigation over an essentially loyal and careful sales process.[1]

Here, briefly, Oracle Corporation purchased NetSuite in 2016. Defendant Larry Ellison was a founder and major blockholder of both companies. Because he stood on both sides of the transaction, because he had great influence in the operation of Oracle's business, and because his interest in NetSuite was greater than his interest in Oracle, the opportunity for self-dealing was apparent. Plaintiffs and others, stockholders of Oracle, sued derivatively, alleging that Ellison and Oracle CEO Safra Catz had caused Oracle to overpay for NetSuite, and that a majority of Oracle's board of directors were not independent of Ellison. The matter survived a motion to dismiss; the Company then appointed two new independent directors who composed the majority of a special litigation committee (the "SLC"), which investigated and determined that it was in Oracle's best interests that the suit go forward to a resolution, under the derivative Plaintiffs and their counsel. Much litigation ensued, the matter was tried over ten days, and ultimately, I found that

---

[1] *In re Xoom Corp. S'holder Litig.*, 2016 WL 4146425, at *5 (Del. Ch. Aug. 4, 2016).

Ellison had insulated himself from the transaction so that no liability attached. The Complaint was amended five times, and I delivered seven memorandum opinions of the Court.[2] Plaintiffs ultimately recovered nothing from the transaction litigation.

After I found for Defendants, Plaintiffs moved for a mootness fee. They note that during the pendency of the litigation, and (per Plaintiffs) in response thereto, Oracle appointed two independent directors (the "New Directors") referred to above, who then served on the SLC. In Plaintiffs' view, the litigation thus worked a corporate benefit—increasing the percentage of independent directors—and Plaintiffs are entitled to a mootness fee of $5 million, notwithstanding that ultimately, Defendants prevailed in the litigation. Oracle disagrees, and the matter has been briefed and argued.

It is Plaintiffs' position that the fact of the post-trial defeat of their claims is inconsequential—the benefit was complete when the two New Directors were appointed, five years before my post-trial opinion was issued. Oracle counters that the hiring of the New Directors was not caused by the litigation; and that, in any event, any benefit would be negative when netted against the cost of the litigation to Oracle. More fundamentally, Oracle points out that for a plaintiff to be entitled to fees for creating a corporate benefit, either the benefit must result from a settlement of claims or, if the benefit is worked without a settlement, there must be a nexus

---

[2] *See In re Oracle Corp. S'holder Litig.*, 2023 WL 3408772, at *16–17 (Del. Ch. May 12, 2023).

between the theory of the action and the benefit; and not, as they characterize it here, a mere fortuity only tangentially related to the litigation.

I agree. The appointment of the New Directors did not moot any issues in the case, nor was it an aim of Plaintiffs' litigation. Assuming that there was a causal relationship between the timing of the hiring of the New Directors and the litigation's survival of the motion to dismiss (which I do assume, without deciding) the appointment was incidental to, not the aim of, the litigation. As Plaintiffs point out, our courts have awarded fees under the corporate benefit doctrine for therapeutic benefits reached in settlements, even where the therapeutic benefit was not sought in the complaint. The benefit there was achieved through compromise of the claims raised, however. Here, the matter was litigated through trial, unsuccessfully. The appointment of the New Directors was not related to the causes of action raised in the complaints themselves, and did not result from the compromise of those claims.

This jurisdiction follows the American Rule on fees; each party bears her own. An exception occurs where the litigation works a common benefit on a class or a corporate entity; equity then requires that the party creating the benefit for the entity not unduly bear the burden. But that is not the case here. If Plaintiffs are correct that the New Directors were engaged primarily to serve on the SLC in response to Plaintiffs' suit, that is not a benefit created by the efforts of Plaintiffs—it is merely

3

a collateral effect of this litigation, and awarding fees in this situation would create an unwholesome incentive.

Plaintiffs, it proves, had a bad bull. The ride was long and skillfully done, but not a winner. I feel sympathy for Plaintiffs' counsel here, who proceeded derivatively, in good faith and with great skill and vigor, at great cost and effort to themselves. Moreover, the SLC—acting for the Company—decided that the litigation was in the best interests of Oracle, and recommended the derivative action go forward to determine whether damages were available.[3] Nonetheless, this is counsels' business model: sue derivatively, on a contingency basis, accept the freight in a losing case, while seeking a multiple of a lodestar in a successful one. The fact that this case consumed monumental effort on the part of some of the best in the plaintiffs' bar, like the fact of my sympathy, does not change that.

My reasoning follows in more detail.

## I. BACKGROUND

I limit my discussion of the facts to only those necessary to understand my analysis.[4]

---

[3] In that sense, the litigation presumably worked a benefit, in the eyes of the SLC at least, on behalf of Oracle. Plaintiffs have eschewed seeking fees in connection with this benefit, and I do not consider it here.

[4] For interested readers who wish to read the entire factual background, please refer to my May 12, 2023, memorandum opinion. *See In re Oracle Corp. Deriv. Litig.*, 2023 WL 3408772, at *3–16.

The initial complaint in this matter was filed on May 3, 2017, and a separate action was filed on July 18, 2017.[5] The actions were then consolidated, and the case was reassigned to me.[6] At that time, the operative complaint contained one count: breach of fiduciary duty against thirteen directors on Oracle's board, including Defendants Ellison and Catz.[7] Plaintiffs sought a declaration that the director defendants had breached their fiduciary duties and sought money damages from the named individual defendants.[8] Defendants moved to dismiss the operative complaint on October 27, 2017.[9]

On March 19, 2018, I denied motions to dismiss under Court of Chancery Rules 23.1 and 12(b)(6) after determining that Plaintiffs pled facts that made it reasonably conceivable that a majority of the Oracle board of directors ("Oracle's Board") lacked independence from Ellison.[10] As a result of my memorandum opinion, Plaintiffs voluntarily dismissed all individual defendants without prejudice, other than Ellison and Catz.[11]

---

[5] *In re Oracle Corp. Deriv. Litig.*, 2023 WL 3408772, at *16.

[6] *Id.*

[7] *See* Verified Deriv. Compl. ¶¶ 169–72, *Fireman's Ret. Sys. of St. Louis v. Ellison*, C.A. No. 2017-0519-JTL, Dkt. No. 1.

[8] *See* Verified Deriv. Compl., Prayer for Relief, *Fireman's Ret. Sys. of St. Louis v. Ellison*, C.A. No. 2017-0519-JTL.

[9] *See* Defs.' Mot. to Dismiss the Verified Deriv. Compl., Dkt. No. 44; Nominal Def. Oracle Corp.'s Mot. to Dismiss, Dkt. No. 45.

[10] *In re Oracle Corp. Deriv. Litig.*, 2018 WL 1381331, at *20–23 (Del. Ch. Mar. 19, 2018).

[11] *In re Oracle Corp. Deriv. Litig.*, 2023 WL 3408772, at *16; Defs.' Stipulated Order of Dismissal Without Prejudice, Dkt. No. 79.

On May 4, 2018, Oracle's Board decided to appoint Charles Moorman IV and William Parrett (the "New Directors") to the Board.[12] At that same meeting, Oracle's Board resolved to form a special litigation committee (the "SLC") in connection with this lawsuit.[13] The New Directors accepted the offer to join Oracle's Board and the SLC.[14]

On July 22, 2019, I granted Plaintiffs' motion to file an amended derivative complaint.[15] The first amended complaint reasserted the count for breach of fiduciary duty against the voluntarily dismissed individual defendants and added a new claim against individual defendants affiliated with NetSuite for aiding and abetting breaches of fiduciary duty.[16] Plaintiffs sought a declaration in their favor on both counts and requested money damages for the harm suffered by Oracle.[17]

On August 15, 2019, the SLC informed the Court that it had concluded that the litigation should proceed and that the Plaintiffs should be allowed to proceed on Oracle's behalf.[18]

---

[12] Transmittal Aff. of Daniel E. Kaprow, Esq. in Supp. of Nominal Def. Oracle Corp.'s Answering Br. Opp'n Pls.' Appl. for Att'ys' Fees, Ex. 13, at 6, Dkt. No. 844.

[13] *Id.* at 4.

[14] *See In re Oracle Corp. Deriv. Litig.*, 2019 WL 6522297, at *7 n.126 (Del. Ch. Dec. 4, 2019).

[15] Order Granting Pl.'s Mot. for Leave to File Am. Compl., Dkt. No. 138.

[16] Pl.'s Verified Am. Deriv. Compl. ¶¶ 145–53, Dkt. No. 139.

[17] Pl.'s Verified Am. Deriv. Compl. Prayer for Relief.

[18] Letter to Vice Chancellor Glasscock from Kevin R. Shannon on behalf of the SLC, Dkt. No. 146.

A second amended complaint was filed on November 27, 2019.[19] The second amended complaint reasserted Count I for breach of fiduciary duties against Oracle's directors and Count II for aiding and abetting breaches of fiduciary duties against the NetSuite individual defendants.[20] Plaintiffs sought the same monetary damages and declarations sought in their first amended complaint.[21]

Plaintiffs then filed a third amended complaint on February 18, 2020, reasserting Count I for breach of fiduciary duty against the remaining Oracle individual defendants and Count II for aiding and abetting breaches of fiduciary duty against the NetSuite individual defendants.[22] The relief sought by Plaintiffs in the third amended complaint remained the same: declarations in favor of Plaintiffs and monetary damages.[23] I dismissed Count II of the third amended complaint on June 22, 2020.[24]

Plaintiffs proceeded to file two more amended complaints: the fourth amended complaint was filed on October 22, 2020,[25] and the fifth amended complaint was filed on December 11, 2020.[26] These complaints reasserted Count I for breach of fiduciary duty against the Oracle individual defendants and added a

---

[19] Verified Second Am. Deriv. Compl., Dkt. No. 271.
[20] *Id.* ¶¶ 170–74.
[21] Verified Second Am. Deriv. Compl. Prayer for Relief.
[22] Pl.'s Verified Third Am. Deriv. Compl. ¶¶ 201–07, Dkt. No. 315.
[23] Pl.'s Verified Third Am. Deriv. Compl. Prayer for Relief.
[24] *In re Oracle Corp. Deriv. Litig.*, 2020 WL 3410745, at *16 (Del. Ch. June 22, 2020).
[25] Co-Lead Pls.' Verified Fourth Am. Deriv. Compl., Dkt. No. 454.
[26] Co-Lead Pls.' Verified Fifth Am. Deriv. Compl., Dkt. No. 484.

new Count II for breach of fiduciary duty against defendant Renée James in her capacity as chair of the special committee that was charged with considering the challenged acquisition.[27] The relief sought by Plaintiffs remained the same: declarations in Plaintiffs' favor and monetary damages.[28]

A ten-day trial was held in July and August 2022.[29] On December 22, 2022, Plaintiffs voluntarily dismissed defendant James with prejudice.[30] I issued my post-trial memorandum opinion on May 12, 2023, finding in favor of the Oracle defendants.[31]

On May 22, 2023, Plaintiffs applied for attorneys' fees on the basis that Plaintiffs' prosecution of this lawsuit through trial conferred a corporate benefit on Oracle because Oracle appointed the New Directors.[32] Plaintiffs' application for attorneys' fees was fully briefed on October 11, 2023.[33] I heard oral arguments on November 17, 2023, and consider the matter fully submitted as of that date.[34]

---

[27] *See* Co-Lead Pls.' Fourth Am. Deriv. Compl. ¶¶ 217–29; Co-Lead Pls.' Fifth Am. Deriv. Compl., ¶¶ 223–35.

[28] *See* Co-Lead Pls.' Fourth Am. Deriv. Compl. Prayer for Relief; Co-Lead Pls.' Fifth Am. Deriv. Compl. Prayer for Relief.

[29] *In re Oracle Corp. Deriv. Litig.*, 2023 WL 3408772, at *17.

[30] *Id.*

[31] *Id.* at *36.

[32] Pls.' Appl. for Att'ys' Fees, Dkt. No. 836 ("Pls.' Appl.").

[33] *See* Pls.' Reply Br. Opp'n Oracle's Legal Defenses to Pls.' Fee Application, Dkt. No. 868 ("Pls.' RB").

[34] *See* Judicial Action Form re: Pls.' Mot. for Fees, Dkt. No. 871.

## II. ANALYSIS

Under the American Rule, "each party is normally obliged to pay only his or her own attorneys' fees, whatever the outcome of the litigation"[35] unless a special circumstance exists dictating otherwise.[36] One such special circumstance is the corporate benefit doctrine, which allows a plaintiff to be awarded attorney's fees upon a showing that "(1) the suit was meritorious when filed, (2) the defendant took an action that produced a corporate benefit before the plaintiffs obtained a judicial resolution, and (3) the suit and the corporate benefit were causally related."[37] The purpose of the corporate benefit doctrine "is to redistribute equitably a portion of the benefit received by the corporation to the successful shareholder litigants in the form of reimbursing their costs[,]"[38] or, looking at it another way, to distribute equitably the costs that produced that benefit.

An often-invoked corollary of the corporate benefit doctrines is the "mootness rule," under which a plaintiff may be awarded attorneys' fees "when claims have been mooted . . . because of action taken by the defendants, and the action taken by the defendants that rendered the claim moot simultaneously created the corporate benefit that the plaintiff had [sought.]"[39]  "[T]here is a rebuttable presumption the

---

[35] *Johnston v. Arbitrium (Cayman Islands) Handels AG*, 720 A.2d 542, 545 (Del. 1998).
[36] *Barrows v. Bowen*, 1994 WL 514868, at *1 (Del. Ch. Sept. 7, 1994).
[37] *EMAK Worldwide v. Kurz*, 50 A.3d 429, 432 (Del. 2012).
[38] *Dover Hist. Soc.'y, Inc. v. City of Dover Plan. Comm'n*, 902 A.2d 1084, 1091 (Del. 2006).
[39] *Crothall v. Zimmerman*, 94 A.3d 733, 737–38 (Del. 2014).

suit and the benefit were causally related because the defendant is in the best position to know the events, reasons, and decision behind its action."[40]

The parties do not dispute that this lawsuit was meritorious when filed. While the parties refer to Plaintiffs' request for attorneys' fees as a "mootness fee," both parties agree that the appointment of the New Directors did not render any claim moot in this lawsuit.[41] Rather, the dispute principally centers around the latter two elements of the corporate benefit doctrine: whether the appointment of the New Directors constitutes a corporate benefit and whether the litigation caused Oracle to appoint the New Directors.[42] I assume without deciding that the appointment of the New Directors was accelerated so that the independent New Directors could serve on the SLC investigating the merits of this litigation.

The issue then becomes whether Oracle's decision to appoint the New Directors was a corporate benefit achieved via the litigation, and, if so, whether that corporate benefit is sufficiently similar to the benefit sought by Plaintiffs through this litigation to justify an award in equity.

---

[40] *EMAK Worldwide*, 50 A.3d at 433.

[41] *See* Oral Arg. on Pls.' Mot. for Fees Tr. 53:16–23, Dkt. No. 872 (Plaintiffs' counsel explaining that "the word mootness is used loosely to say, unlike a settlement, when there is a unilateral act by the defendants."). Nor could Plaintiffs claim that the appointment of the New Directors rendered any claim moot because the many amended complaints filed since the appointment have not removed any claims present at the time of the appointment.

[42] *See* Nominal Def. Oracle Corp.'s Answering Br. Opp'n Pls.' Appl. for Att'y's Fees 19–27, Dkt. No. 843 ("Def.'s Opp'n").; Pls.' Appl. 8–9; Pls.' Reply Br. 8–20, Dkt. No. 868 ("Pls.' RB").

*Corporate Benefit*

To constitute a corporate benefit, "the action must specifically and substantially benefit the corporation and its stockholders[.]"[43] "While the benefit achieved may have an indirect economic effect on the corporation, . . . the benefit need not be measurable in economic terms."[44] The corporate benefit may include "[c]hanges in corporate policy . . . [which,] if attributable to the filing of a meritorious suit, may justify an award of counsel fees."[45] This Court has "discretion to deny attorneys' fees 'altogether if the Court finds that the litigation did not result in any ascertainable benefit to the corporation.'"[46]

Plaintiffs note that, after the appointment of the New Directors, the composition of Oracle's Board was evenly split between dependent and independent directors, i.e., at least seven out of fourteen directors on Oracle's Board were, on their face, independent.[47] According to Plaintiffs, this even split on Oracle's Board and the ability of Oracle's Board to create a two-thirds majority independent SLC constitute the corporate benefit conferred on Oracle by Plaintiffs' litigation.[48] The

---

[43] *Garfield v. Boxed, Inc.*, 2022 WL 17959766, at *10 (Del. Ch. Dec. 27, 2022).

[44] *Tandycrafts Inc. v. Initio P'rs*, 562 A.2d 1162, 1165 (Del. 1989).

[45] *Id.*

[46] *Off v. Ross*, 2009 WL 4725978, at *4 (Del. Ch. Dec. 10, 2009) (quoting *Greenfield v. Frank B. Hall & Co., Inc.*, 1992 WL 301348, at *3 (Del. Ch. Oct. 19, 1992)).

[47] Pls.' Appl. 2. I note that Plaintiffs assert the corporate benefit was conferred at the moment the New Directors were appointed to the Board and to the SLC. *See* Pls.' Appl. 8–9; Oral Arg. on Pls.' Mot. for Fees Tr. 20:22–21:10; 22:16–18.

[48] *See* Pls.' Appl. 8–9.

addition of the independent directors, according to Plaintiffs, also improved the ability of Oracle's Board "to deal with future conflict transactions, or [ ] to actually deal with the disposition of the litigation plus future conflict transactions[.]"[49] Thus, Plaintiffs ask that I assess the value of this corporate benefit as of the day that the New Directors were appointed to the Oracle Board and the SLC, that is May 4, 2018.[50]

In support of their contention, Plaintiffs point to several cases where this Court decided that the appointment of independent directors conferred a corporate benefit.[51] Defendants retort that the appointment of two independent directors, even in Plaintiffs' view, results only in a still-conflicted (non-majority-independent) board; and that the resulting "even split" is insufficient to assist Oracle's Board in overcoming future Court of Chancery Rule 23.1 motions or approving transactions that may otherwise be subject to scrutiny as conflicted.[52] Therefore, according to Defendants, the appointment of the New Directors did not confer a significant or substantial corporate benefit necessary to grant Plaintiffs' fee application.

---

[49] Oral Arg. on Pls.' Mot. for Fees Tr. 55:9–16.
[50] *See id.* at 20:22–21:10; 22:16–18.
[51] *See* Pls.' Appl. 5–8 (gathering cases).
[52] Def.'s Opp'n 29–30. Defendants also argue that, to the extent the New Directors' appointments conferred a corporate benefit to Oracle, the "net benefit" is greatly diminished (even completely offset) by the costs Oracle incurred in defending this litigation through a trial where the Oracle Board was ultimately vindicated. *Id.* at 27–32. For purposes of considering Plaintiffs' application for fees, I need not reach the "net benefit" analysis and, therefore, decline to address whether it is applicable in this context.

12

Plaintiffs have requested that I not consider the actions of the SLC or the results of the SLC's investigation.[53] Accordingly, I limit my consideration of the effect of the New Directors' appointment as of the date of their appointment, that is May 4, 2018.[54] Even if I were to consider that the appointment of the New Directors enabled Oracle to create a majority independent SLC, the creation of the SLC alone did not confer a specific or substantial benefit to Oracle or its stockholders. That is evidenced by Plaintiffs' continued prosecution of the breach of fiduciary duty claim investigated by the SLC.[55]

In appropriate circumstances, appointment of independent directors to a board can constitute a corporate benefit.[56] However, to the extent a corporate benefit was conferred on Oracle by the appointments of the New Directors, I find it insufficient to warrant granting Plaintiffs' request for fees. The cases upon which Plaintiffs rely in asserting that the appointment of independent directors alone confers a corporate benefit differ from this case in an important manner: the appointments in cases cited

---

[53] *See* Oral Arg. on Pls.' Mot. for Fees Tr. 6:4–8, 20:16–18; Pls.' Appl. 4; Pls.' RB 24 ("Plaintiffs are not claiming that the creation of an SLC was itself a benefit. Plaintiffs are not seeking a fee based on the work of Plaintiffs' counsel during or after the SLC process."). The SLC ultimately determined that it would be in the best interest of the corporation for Plaintiffs to litigate the claims on behalf of Oracle. *In re Oracle Corp. Deriv. Litig.*, 2023 WL 9053148, at *2 (Del. Ch. Dec. 28, 2023).
[54] *See* Pls.' RB 23.
[55] *See In re Oracle Corp. Deriv. Litig.*, 2023 WL 3408772.
[56] *See Tandycrafts*, 562 A.2d at 1165 (explaining that "[c]hanges in corporate policy . . . if attributable to the filing of a meritorious suit, may justify an award of counsel fees" under the corporate benefit doctrine).

13

by Plaintiffs were therapeutic benefits achieved through settlements, involving the compromise of claims in return for the beneficial acts.[57]  Here, there was no settlement reached in this lawsuit at all, let alone one that achieved the appointment of the New Directors as a therapeutic benefit.  Rather, the parties here spent years litigating this suit instead of "obtain[ing] the remedial benefits quickly, consensually, and without being forced to engage in protracted litigation."[58]

Looked at another way, the existing directors did not breach fiduciary duties in the NetSuite Acquisition.  The fact that the New Directors were brought on in response to this lawsuit did not supplement the (loyal) board in a way that conferred a benefit in the context of this litigation.  If the New Directors were not appointed to complete a majority independent special litigation committee, the result of this

---

[57] *See City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. Foley*, C.A. No. 2020-0650-KSJM, at 16–18, 45, 48 (Del. Ch. June 21, 2022) (TRANSCRIPT) (approving request for attorneys' fees as part of settlement of derivative action where the corporation appointed two new independent directors, among other corporate governance reforms, prior to final resolution of the case); *In re Tile Shop Hldgs., Inc. S'holder Deriv. Litig.*, C.A. No. 10884-VCG, at 7–10, 12–13, 41–43 (Del. Ch. Aug. 23, 2018) (TRANSCRIPT) (approving request for attorneys' fees as part of settlement of derivative action where the company appointed an independent director, among other corporate governance reforms, prior to full briefing and oral arguments on a motion to dismiss); *Hollywood Firefighters' Penion Fund v. Malone*, 2021 WL 5179219, at *6, 10–11 (Del. Ch. Nov. 8, 2021) (approving attorney's fees as part of a settlement where the individual defendants' voting power was decreased rather than appointment of independent directors to create a facially independent board); *In re TerraForm Power, Inc. Deriv. Litig.*, C.A. No. 11898-CB, at 13–14, 19–20 (Del. Ch. Dec. 19, 2016) (TRANSCRIPT) (approving attorneys' fees as part of settlement where the company appointed three independent directors to create a majority independent board, where plaintiffs sought the appointment of one independent director).

[58] *Almond ex rel. Almond fam. 2001 Tr. v. Glenhill Advisors LLC*, 2019 WL 1556230, at *8 (Del. Ch. Apr. 10, 2019), *aff'd* 224 A.3d 200 (Del. 2019) (TABLE).

14

lawsuit would be the same. Thus, in the context of this litigation, the benefit to the Company is not substantial.

This reasoning is bolstered, in my view, by the disconnect between the aim of the litigation and any benefit; the relationship between the suit and benefit is attenuated at best. Defendants point out that Plaintiffs did not seek the appointment of independent directors at any time during this litigation, and argue that the benefit worked is not "similar" to the relief sought, as required before a mootness fee is justified under our caselaw.[59] To meet this "similarity" standard, the "claimed benefit must have some relationship to the grievance which led to the filing of the complaint."[60]

Plaintiffs' grievance that prompted the initiation of this litigation and spurred Plaintiffs to prosecute the litigation through trial has always been a complaint that Ellison caused Oracle to overpay for NetSuite. Throughout the life of this litigation, Plaintiffs have sought monetary damages Plaintiffs claimed Oracle incurred because of the over-priced acquisition of NetSuite, as directed by Ellison.[61] Beyond alleging

---

[59] Def.'s Opp'n 20–23.

[60] *Eisenberg v. Chi. Milwaukee Corp.*, 1988 WL 112910, at *5 (Del. Ch. Oct. 25, 1988); *see also Golubinski ex rel. Novavax, Inc. v. Douglas*, C.A. No. 2021-0172-JTL, at 82–88 (Del. Ch. Oct. 18, 2022) (TRANSCRIPT) (reviewing cases and concluding "that there has to be some connection between the relief that the plaintiffs wanted and what the mooting action provided. In the words of the standard, it has to be 'same or similar.'"), *aff'd* 299 A.3d 2 (Del. 2023) (TABLE).

[61] *See* Verified Deriv. Compl. Prayer for Relief, *Fireman's Ret. Sys. of St. Louis v. Ellison*, C.A. No. 2017-0519-JTL; Pl.'s Verified Am. Deriv. Compl. Prayer for Relief; Verified Second Am. Deriv. Compl. Prayer for Relief; Pl.'s Verified Third Am. Deriv. Compl. Prayer for Relief; Co-

sufficient relationships between the defendant directors and Ellison to survive the Rule 23.1 motion to dismiss for demand futility, Plaintiffs' focus in this lawsuit has never been about the perceived or facial independence of Oracle's Board. To the extent that the appointment of the New Directors to Oracle's Board empowered the creation of a majority independent SLC, that "benefit" is unrelated to the grievance that led to Plaintiffs filing suit.

Plaintiffs counter that this Court has previously recognized that granting relief in the form of appointment of an independent director is "difficult for the Court to judicially order,"[62] and rarely sought. Thus, according to Plaintiffs, a denial of their fee request on this ground would prevent future plaintiffs from settling lawsuits "through governance reforms, or the addition of a new director," except in the unlikely event that "the complaint specifically requested such relief."[63] Therefore, Plaintiffs posit that if I disallow fees under the "similarity" standard, a pernicious result would obtain; derivative plaintiffs could not settle damages claims in consideration for therapeutic benefits. This runs counter, per Plaintiffs, to cases where attorneys' fees *have been* awarded when defendants appointed independent

---

Lead Pls.' Verified Fourth Am. Deriv. Compl. Prayer for Relief; Co-Lead Pls.' Verified Fifth Am. Compl. Prayer for Relief.

[62] Pls.' RB 14 (quoting *In re Terraform Power, Inc. Deriv. Litig.*, C.A. No. 11898-CB, at 20 (Del. Ch. Dec. 19, 2016) (TRANSCRIPT)).

[63] Pls.' RB 13.

directors to their boards of directors and to special litigation committees, even where the relevant complaints did not request such relief.[64]

To my mind, the fear that settlement for therapeutic benefits would be inhibited by denying fee-shifting here is misplaced. The cases Plaintiffs cite are distinguishable because there, the attorneys' fees were granted in connection with settlements of—compromises of the claims inhering in—the derivative actions.[65] The court presumably analyzed the give-and-get of the proposed settlement, found a relationship between claims and benefit, and sufficient resulting value to support release of the claims. Here, again, the instant case did not settle and was litigated, unsuccessfully, through trial. Plaintiffs have limited their request to the benefit conferred upon the New Directors' appointment to the Oracle Board and SLC in May 2018. While the creation of the SLC to investigate Plaintiffs' allegations is

---

[64] *See* Pls.' RB 10–13 (gathering cases).

[65] *See City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. Foley*, C.A. No. 2020-0650-KSJM, at 16–18, 45, 48 (Del. Ch. June 21, 2022) (TRANSCRIPT) (approving request for attorneys' fees as part of settlement of derivative action where the corporation appointed two new independent directors, among other corporate governance reforms, prior to final resolution of the case); *Lao v. Dalian Wanda Grp. Co., Ltd*, C.A. No. 2019-0303-JTL 9, at 22–23 (Del. Ch. Nov. 30, 2022) (TRANSCRIPT) (partially approving attorneys' fees as part of settlement of a derivative action where the corporation appointed a new independent director to the board and special litigation committee that investigated the allegations in the operative complaint).

17

related to the initiation of this lawsuit, this creation was incidental to, and not the aim of, Plaintiffs' lawsuit.

Thus, the appointment of the New Directors to Oracle's Board is not the "same or similar" benefit that Plaintiffs sought in filing this derivative action, and worked an insubstantial benefit under the peculiar circumstances of this litigation. In fact, the derivative litigation, well-intentioned, well-tried and brought in good faith, nonetheless came at substantial costs to the Company, with litigation continuing for years after the New Directors' appointment.

### III. CONCLUSION

Upon the specific facts here, Oracle's decision to appoint the New Directors does not constitute a specific or significant corporate benefit sufficient to justify awarding Plaintiffs attorneys' fees in light of the ultimate outcome of this litigation. And to the extent the appointment of the New Directors benefitted the corporation, Plaintiffs did not seek this form of relief and the creation of the majority independent SLC was not the same or similar benefit as the monetary damages that Plaintiffs sought in bringing this suit. Therefore, Plaintiffs' application for attorneys' fees is DENIED. The parties should submit a form of order consistent with this memorandum opinion.

18